2 F.3d 1161
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 The UNITED KEETOOWAH BAND OF CHEROKEE INDIANS, Plaintiff-Appellant,
v.
Wilma MANKILLER, John A. Ketcher, Don Crittenden, Joe Byrd,
Mige Glory, James Garland Eagle, Harold "Jiggs" Phillips,
Sam Ed Bush, Mary Cooksey, Paula Holder, Troy Wayne Poteete,
Barbara Mitchell, Melvina Shotpouch, William Smoke, Harold
DeMoss, Maudie Bazille, Greg Pitcher, Jim Danielson, William
P. Ragsdale, Tommy Thompson, Bud Squirrel, Chad Smith,
Julian Fite, Dean Gritts, William Still, Larry Holmes,
Delbert Walkingstick, Greg Chuckluck, Mike McCoy, John Doe,
Numbers I-IX; Manuel Lujan, Secretary of the United States
Department of the Interior; Ed Brown, Assistant Secretary
for Indian Affairs; Merritt Youngdeer, Director, Muskogee
Area of the Bureau of Indian Affairs; Dennis Springwater,
Muskogee Area of the Bureau of Indian Affairs; Franklin
Dredfulwater, Bureau of Indian Affairs; Defendants-Appellees.
 No. 93-5064.
 United States Court of Appeals, Tenth Circuit.
 Aug. 12, 1993.
 
 Before McKAY, SETH and BARRETT, Circuit Judges.
 ORDER AND JUDGEMENT*
 BARRETT, Senior Circuit Judge.
 
 
 1
 After examining the briefs and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); Tenth Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.
 
 
 2
 The United Keetoowah Band of Cherokee Indians (UKB) appeals from an order of the District Court for the Northern District of Oklahoma which held that Cherokee Nation is an indispensable party and that any action against Cherokee Nation would be barred by the doctrine of sovereign immunity. The court dismissed the UKB's action.
 
 
 3
 In August 1990, the Cherokee Nation Tribal Council passed the Cherokee Nation Tax Code which imposed a tax on the sale of all tobacco products within the defined Indian Country. It also required that retailers affix tax stamps to their products and apply for and obtain a retailer's license.
 
 
 4
 The UKB commenced this action on behalf of two of its members, both of whom operated smoke shops on restricted Cherokee allotments. The UKB contends that Cherokee Nation officials entered upon these allotments and seized inventories of unstamped tobacco products in disregard of the sovereign powers of the UKB.
 
 
 5
 In its action, the UKB sought declaratory and injunctive relief setting forth the rights, privileges, and immunities of the UKB regarding the exercise of governmental powers over its members and their respective allotments. The UKB also sought a declaration concerning the responsibilities of the Secretary of the Interior in protecting the sovereignty of the UKB.
 
 
 6
 The district court granted Cherokee Nation's Motion to Dismiss on the grounds that (1) the court was without subject matter jurisdiction because the action could not proceed without the joinder of Cherokee Nation, an indispensable party under Fed.R.Civ.P. 19(b), and (2) the court previously determined that Cherokee Nation's jurisdiction over Cherokee Indian allotments is superior to that of the UKB, and therefore the principles of res judicata and collateral estoppel are applicable. Because the Intervenors failed to state a cause of action upon which relief could be granted, the district court found it unnecessary to address the exhaustion of tribal remedies contention.
 
 
 7
 The UKB limits its appeal to the assertion that Cherokee Nation's immunity from suit should be set aside to enable the joinder of this indispensable party for purposes of equitable relief only. In support of its argument, the UKB cites Justice Stevens in Oklahoma Tax Commission v. Citizen Band of Potawatomie Indian Tribe, 498 U.S. 505, 514-15 (1991):
 
 
 8
 The rule that an Indian tribe is immune from an action for damages absent its consent is, however, an established part of our law (citation omitted). Nevertheless, I am not sure that the rule of tribal sovereign immunity ... applies to claims for prospective equitable relief against a tribe....
 
 
 9
 (Stevens, J., concurring).
 
 
 10
 However, as the majority opinion indicates, the doctrine of sovereign immunity serves as a bar to the nonconsensual joinder of an Indian tribe in any type of action, regardless of whether the relief sought is equitable or legal in nature.
 
 
 11
 Suits against Indian tribes are thus barred by sovereign immunity absent a clear waiver by the tribe or congressional abrogation. Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58, 98 S.Ct. 1670, 1677, 56 L.Ed. 106 (1978).... A doctrine of Indian tribal sovereign immunity was originally enunciated by this Court, and has been reaffirmed in a number of cases (citations omitted). Congress has always been at liberty to dispense with such tribal immunity or to limit it. Although Congress has occasionally authorized limited classes of suits against Indian tribes, ... Congress has consistently reiterated its approval of the immunity doctrine....
 
 
 12
 Id. at 509-510.
 
 
 13
 We have reviewed the record and AFFIRM substantially for the reasons set forth in the district court's order, dated January 27, 1993, a copy of which is attached hereto.
 
 ATTACHMENT
 
 14
 IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN
 
 DISTRICT OF OKLAHOMA
 
 15
 The United Keetoowah Band of Cherokee Indians in Oklahoma,
 
 
 16
 Plaintiff, Adalene Smith, Daniel Proctor and
 
 
 17
 Lucille Proctor, Intervenors,
 
 
 18
 v.
 
 
 19
 Wilma Mankiller, John A. Ketcher, Don Crittenden, Joe Byrd,
 
 
 20
 Mige Glory, James Garland Eagle, Harold "Jiggs" Phillips,
 
 
 21
 Sam Ed Bush, Mary Cooksey, Paula Holder, Troy Wayne Poteete,
 
 
 22
 Barbara Mitchell, Melvina Shotpouch, William Smoke, Harold
 
 
 23
 DeMoss, Maudie Bazille, Greg Pitcher, Jim Danielson, William
 
 
 24
 P. Ragsdale, Tommy Thompson, Bud Squirrel, Chad Smith,
 
 
 25
 Julian Fite, Dean Gritts, William Still, Larry Holmes,
 
 
 26
 Delbert Walkingstick, Greg Chuckluck, Mike McCoy and John Does I-X.
 
 
 27
 Manuel Lujan, Jr., Secretary of the U.S. Dept. of the
 
 
 28
 Interior, Ed Brown, Assistant Secretary for Indian Affairs,
 
 
 29
 Merritt Youngdeer, Director, Muskogee Area of the Bureau ofIndian Affairs, Dennis Springwater, Muskogee Area of the
 
 
 30
 Bureau of Indian Affairs, Franklin Dredfulwater, Bureau of
 
 
 31
 Indian Affairs, Defendants.
 
 No. 92-C-585-B
 ORDER
 
 32
 The Motions to Dismiss of the federal and nonfederal (Cherokee Nation officials) Defendants, and each of them, as well as said Defendants' Motions to Dismiss the intervenor complaint, are before the court for decision. Following a review of the respective complaints, the applicable legal authorities, and the arguments presented, the court concludes the Motions to Dismiss should be sustained.
 
 
 33
 On page 2 of the response brief of Plaintiff, The United Keetoowah Band of Cherokee Indians in Oklahoma ("UKB"), filed December 23, 1992, Plaintiff states the parties are in agreement regarding the essential facts of the controversy. Plaintiff then states the basic issue is the right of the Cherokee Nation (a nonparty) to enforce the subject ordinance or enactment over the UKB. The court has previously determined in prior cases that the Cherokee Nation's sovereignty is preeminent to that of the UKB in Cherokee Nation Indian Country. United Keetoowah Band of Cherokee Indians in Oklahoma v. Secretary of Interior, No. 90-C-608-B (Northern District of Oklahoma, May 31, 1991), and Buzzard v. Oklahoma Tax Commission, No. 90-C-848-B (Northern District of Oklahoma, February 24, 1992).
 
 The Facts Out of Which the Dispute Arose:
 
 34
 On August 11, 1990, the Cherokee Nation Tribal Council passed an enactment known as the Cherokee Nation Tax Code (Legislative Act No. 8-90). Act No. 8-90 had as its purpose raising revenues to provide governmental services to and economic development for the benefit of the members of the Cherokee Nation. The enactment applies to all Indian Country, which is defined as "Cherokee country," and the Cherokee Nation asserts includes restricted individual allotments. The Act establishes a Tax Commission to implement and enforce its provisions. The Tax Commission is empowered to conduct hearings and promulgate such rules and regulations as it deems necessary.
 
 
 35
 Act No. 8-90 imposes a tax on the sale of all cigarettes and other tobacco products within the defined Indian Country. It provides that all retailers who sell tobacco products in Indian Country must cause tax stamps to be affixed to their tobacco inventories, thus indicating compliance with the law. It provides that any unstamped tobacco products will be subject to seizure, forfeiture and sale. The Act also provides that all retailers who intend to sell tobacco products in Indian Country must first apply for and receive a Cherokee Nation tobacco retailer license.
 
 
 36
 Early in 1992, it became known to the Cherokee Tax Commission office that cigarettes were being sold at smoke shops located in the communities of Jay and Bull Hollow in Cherokee Indian Country. The Cherokee Nation Tax Commission verified that neither location was licensed by the Commission. On January 17, 1992, an unstamped carton of cigarettes was purchased at Lil Tims Smoke Shop by a Cherokee Nation official. On February 21, 1992, unstamped cigarettes were likewise purchased at Turtleshell Smoke Shop. The Tax Commission investigation reflected that both shops were observed in the active business of retail tobacco sales. A tribal realty officer verified that both of these smoke shop locations were on individual restricted Cherokee allotments.
 
 
 37
 On February 28, 1992, the Cherokee Nation Tax Commission entertained applications to seize and forfeit the unstamped cigarettes and tobacco at both of the above-mentioned smoke shops. The Tax Commission issued an order to seize the tobacco products located at each of such smoke shops and Cherokee Nation marshals served the orders along with notices of forfeiture on February 28, 1992. All interested parties were notified that they should answer within ten days or be forever barred from asserting an interest in the seized goods. On March 31, 1992, the Cherokee Nation Tax Commission ordered the seized tobacco goods and contraband forfeited for failure to respond within the ten-day period. On September 2, 1992, the Cherokee Nation Tax Commission ordered the seized tobacco destroyed.
 
 
 38
 The UKB has commenced this action on behalf of two of its members, Adalene Smith and Soldier Shell, asserting that each operated smoke shops on restricted allotments "subject to the jurisdiction of the UKB by operation of the Constitution of the UKB." Such shops were licensed and taxed by the UKB. The UKB contends the nonfederal defendants (the Cherokee Nation officials) entered upon the restricted allotments and seized the inventories of cigarettes and tobacco products over the objection of the UKB and in disregard of its sovereign powers. The UKB further asserts that the Secretary (federal defendant) has done nothing to prevent the actions of the nonfederal defendants and by the federal defendants' inaction they have been a party to the setting aside of the sovereign powers of the UKB. The UKB prays that this court enter a declaratory judgment setting forth the rights, privileges and immunities of the UKB with respect to the exercise of its governmental powers over its members and "the exercise of its governmental powers over the restricted allotments of its members." The UKB also seeks a declaration from the court concerning the responsibilities of the Secretary of Interior and enter such injunctive and mandatory relief requiring the Defendants to observe and comply with UKB authority and to further require the Secretary to take active measures to protect the sovereignty of the UKB. The UKB also seeks money damages.
 
 
 39
 The Intervenors, Adalene Smith, Daniel Proctor and Lucille Proctor, allege that they are members of the UKB, not the Cherokee Tribe. Adalene Smith and Daniel Proctor operated one of the subject raided smoke shops on restricted allotment land owned by Lucille Proctor. It is asserted that Lucille Proctor's Cherokee restricted allotment land and the business operated thereon are under the exclusive jurisdiction of the federal government by operation of the Curtis Act, Act of June 28, 1898, 30 Stat. 495, Act of March 3, 1901, 31 Stat. 1447, Cherokee Agreement, Act of July 1, 1902, 32 Stat. 716, Act of April 28, 1904, 33 Stat. 573, Act of April 26, 1906, 34 Stat. 137 and subsequent amendments thereto. Intervenors assert federal jurisdiction over Cherokee restricted allotment lands has never been ceded or retroceded by an act of Congress. Intervenors seek a permanent injunction against the Defendants from unauthorized trespass and compensatory damages as well as fees and costs.
 
 
 40
 The Defendants moved to dismiss the action of the UKB and the Intervenors and to recover costs and attorney fees asserting that the court lacks subject matter jurisdiction, the case is barred by the principles of res judicata and collateral estoppel, Plaintiff has failed to exhaust tribal remedies, and has failed to state a cause of action upon which relief can be granted. Since the court concludes the Cherokee Nation is an indispensable party, that res judicata and collateral estoppel apply to the UKB and that the Intervenors have failed to state a cause of action, it is unnecessary to address the exhaustion of tribal remedies contention.
 
 Legal Conclusions and Authorities:
 
 41
 The Defendants urge that the case should be dismissed for want of subject matter jurisdiction because the Cherokee Nation is an indispensable party under Fed.R.Civ.P. 19(b).
 
 
 42
 Fed.R.Civ.P. 19(a) provides that a person or entity who "claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may * * * as a practicable matter impair or impede his ability to protect that interest" shall be joined in the action, if feasible. It is asserted by the Defendants that the land on which the subject smoke shops are situated is restricted Cherokee allotments and, therefore, "Indian Country" within the Cherokee Nation. See, 18 U.S.C. Sec. 1151(c). This court has previously decided that the Cherokee Nation is the only tribal entity with jurisdictional authority in Indian Country within the Cherokee Nation. United Keetoowah Band of Cherokee Indians in Oklahoma v. Secretary of the Interior, No. 90-C-608-B (Northern District of Oklahoma, May 31, 1991) (presently on appeal to the Court of Appeals for the Tenth Circuit). The claim of the UKB herein directly attacks the sovereignty of the Cherokee Nation over the subject land and smoke shops.[1] Thus, the court cannot grant complete relief without adjudicating the rights of the Cherokee Nation.
 
 
 43
 Fed.R.Civ.P. 19(b) requires that the determination the Cherokee Nation is an indispensable party must include a finding that the action cannot "in equity and good conscience" proceed in its absence. See, 3A Moore's Federal Practice p 19.07-2, pp. 128-129 (1987). In the case of Provident Tradesmens Bank and Trust Co. v. Patterson, 390 U.S. 102, 109-111, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968), the court identified four interests that must be examined in each case to determine whether, in equity and good conscience, a court should proceed in the absence of an otherwise necessary party: (1) the plaintiff's interest in having a forum; (2) the defendant's interest in avoiding multiple litigation, or inconsistent relief, or sole responsibility for a liability he shares with another; (3) the interest of the party alleged to be indispensable; and (4) the interest of the courts and the public in complete, consistent, and efficient settlement of controversies. 390 U.S. at 109-111. The court stated whether or not a party is indispensable must be analyzed on a case by case basis to determine if the party is truly indispensable, or whether the litigation can proceed without the party. Id. at 118-119. Since the relief requested by the Plaintiff herein directly affects the sovereignty and fundamental jurisdiction of the Cherokee Nation, the court concludes the Cherokee Nation's interests are substantial and the case cannot be completely and efficiently resolved without the presence of the Cherokee Nation. However, it is well established that absent express consent of the Cherokee Nation or by Congress, the Cherokee Nation cannot be joined due to its sovereign immunity from suit. Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58 (1978); Oklahoma Tax Commission v. Citizen Band Potawatomi Indian Tribe of Oklahoma, 498 U.S. 505, 111 S.Ct. 905 (1991).[2]
 
 
 44
 Courts have routinely dismissed actions under Fed.R.Civ.P. 19(b) because an Indian tribe is indispensable where a plaintiff has sought to litigate matters affecting an absent tribe's interests. McClendon v. United States, 885 F.2d 627 (9th Cir.1989), citing Lomayaktewa v. Hathaway, 520 F.2d 1324, 1326 (9th Cir.1975), cert. denied sub nom. Susenkewa v. Kleppe, 425 U.S. 903 (1976); Enterprise Management Consultants, Inc. v. United States, 883 F.2d 890 (10th Cir.1989); Tewa Tesuque v. Morton, 498 F.2d 240 (10th Cir.1974), cert. denied, 420 U.S. 962 (1975); Confederated Tribes of the Chehalis Indian Reservation v. Lujan, 928 F.2d 1496, 1498 (9th Cir.1991); Kickapoo Tribe of Oklahoma v. Lujan, 728 F.Supp. 791, 796-797 (D.D.C.1990).
 
 
 45
 A forthright analysis of Plaintiff's complaint compels the conclusion that the action is against the Cherokee Nation itself because the individual nonfederal Defendants were acting within their official capacities. Tewa Tesuque v. Morton, 498 F.2d 240, 243 (10th Cir.1974). The UKB, on page 2 of its response brief, acknowledges the critical issue of the jurisdictional rights of the Cherokee Nation. Thus, the court concludes that the Cherokee Nation is an indispensable party herein, so the action is hereby dismissed for want of an indispensable party. Further, the court concludes the principles of res judicata and collateral estoppel are applicable to the UKB. Lawlor v. National Screen Service Corp., 349 U.S. 322, 326 (1955). The restricted Cherokee Indian allotments on which the smoke shops are located are part of the original Cherokee allotments. The court has previously determined the Cherokee Nation jurisdiction over said lands is superior to that of the UKB in Buzzard v. Oklahoma Tax Commission, No. 90-C-848-B (Northern District of Oklahoma, February 24, 1992), and United Keetoowah Band of Cherokee Indians in Oklahoma v. Secretary of the Interior, No. 90-C-609-B (Northern District of Oklahoma, May 31, 1991). See also, 18 U.S.C. Sec. 1151(c). Essentially for the reasons expressed herein, the Intervenors have failed to state a cause of action against the federal and nonfederal Defendants. Intervenors' motion for summary judgment is hereby OVERRULED.
 
 
 46
 Defendants' motions to dismiss are SUSTAINED and costs are assessed against the Plaintiff, UKB, if timely applied for pursuant to Local Rule 6. The parties are to pay their own respective attorneys' fees.
 
 
 47
 DATED this 27th day of January, 1993.
 
 
 48
 /s/ Thomas R. Brett
 
 THOMAS R. BRETT
 UNITED STATES DISTRICT JUDGE
 
 
 *
 This Order and Judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 The Cherokee Nation has treaty protected rights of self-government including the right to pass their own laws and to be governed by them. E.E.O.C. v. Cherokee Nation, 871 F.2d 937-938 (10th Cir.1989). The Cherokee Nation has established a district court with civil and criminal jurisdiction over Indian Country and has been encouraged to do so. Ross v. Neff, 905 F.2d 1349, 1352-53 (10th Cir.1990); U.S. v. Sands, 968 F.2d 1058, 1062 (10th Cir.1992)
 
 
 [2]
 It is urged by the nonfederal Defendants that having not waived sovereign immunity nor Congress having done so, the Cherokee Nation is not subject to being sued herein