Dear State Representative Sherrer
¶ 0 This office has received your request for an official Attorney General Opinion, in which you ask, in effect, the following questions:
1. Under what circumstances may an Indian tribe issue motorvehicle licenses?
 2. May the United Keetoowah Band of Cherokee Indians ofOklahoma ("UKB") issue motor vehicle licenses?
 Authority of an Indian Tribe to Issue Motor Vehicle Licenses
¶ 1 The authority for a federally recognized Indian tribe to issue motor vehicle licenses in Oklahoma has been litigated. InOklahoma Tax Commission v. Sac and Fox Nation, 508 U.S. 114
(1993), the United States Supreme Court held that the Oklahoma Tax Commission was precluded from imposing state taxes on Sac and Fox members living on the Sac and Fox "informal reservation," consisting primarily of trust and restricted allotments, lands which met the federal definition of "Indian country." See id.
at 123.
 Absent explicit congressional direction to the contrary, we presume against a State's having the jurisdiction to tax within Indian country, whether the particular territory consists of a formal or informal reservation, allotted lands, or dependent Indian communities.
Id. at 128 (emphasis added). In so ruling, the Court upheld the right of the Sac and Fox Tribe to tax and register motor vehicles principally garaged within the jurisdiction of the Sac and Fox Tribe. The Court relied upon McClanahan v. State TaxCommission, 411 U.S. 164, 179-81 (1973), wherein the Court held that a "State was without jurisdiction to subject a tribal member living on the reservation, and whose income derived from reservation sources, to a state income tax absent an express authorization from Congress." Sac and Fox Nation,508 U.S. at 123. Applying the McClanahan holding to motor vehicles in Sacand Fox Nation the Court emphasized the residency requirement thus:
 The residence of a tribal member is a significant component of the McClanahan presumption against state tax jurisdiction. But our cases make clear that a tribal member need not live on a formal reservation to be outside the State's taxing jurisdiction; it is enough that the member live in "Indian country." Congress has defined Indian country broadly to include formal and informal reservations, dependent Indian communities, and Indian allotments, whether restricted or held in trust by the United States.
Id. The Court remanded for a decision on whether the tribal members lived in Indian country, stating that is the first determination to be made in such a case. Id. at 125.
 UKB and Indian Country
¶ 2 "The UKB is an Indian tribe organized pursuant to the Oklahoma Indian Welfare Act, § 3, 25 U.S.C. § 503 (1988)."Buzzard v. Okla. Tax Comm'n, 992 F.2d 1073, 1075 (10th Cir. 1993). The Buzzard case involved the UKB purchasing land subject to a restriction against alienation requiring the approval of the United States Secretary of the Interior. Id.
The tribe argued this made the land "Indian country" and not subject to state tobacco taxing statutes. Id.
¶ 3 The Court articulated the standards for Indian country as follows:
 For purposes of both civil and criminal jurisdiction, the primary definition of Indian country is 18 U.S.C. § 1151. Section 1151 defines Indian country to include: (1) land within the limits of any Indian reservation, 18 U.S.C. § 1151(a); (2) dependent Indian communities, id. § 1151(b); and (3) Indian allotments, the Indian titles to which have not been extinguished, id. § 1151(c). In addition the Supreme Court has held that Indian country includes land "`validly set apart for the use of the Indians as such, under the superintendency of the Government.'" Applying this test, the Court has concluded that Indian country includes land designated as an "Indian colony," and land held in trust by the United States for the use of an Indian tribe. . . .
Id. at 1076 (citations omitted).
¶ 4 In Buzzard the UKB requested a declaratory ruling that land purchased by them was Indian country and that the state of Oklahoma could not enforce state tobacco taxes against a smoke shop operated on that land. Id. at 1075. The Tenth Circuit affirmed the district court's decision that the purchase of land by the UKB was insufficient to make the land "Indian country," even though the UKB's charter required it to obtain approval from the United States before disposing of any land. Id. That self-imposed restriction did not rise to a showing that the smoke shops were on land "superintended by the federal government," such as land held in trust. Id. at 1076. In a footnote the Tenth Circuit noted that the UKB claimed that it was an heir to the Cherokee Nation, but that the district court had held "that the UKB is not an heir to the Cherokee Nation and the UKB has not challenged this ruling." Id. at 1075 n. 5.
¶ 5 In the subsequent case of Alaska v. Native Village,522 U.S. 520 (1998), the United States Supreme Court also noted that Section 1151 established the primary definition for Indian Country jurisdiction:
 "Indian country" is currently defined at 18 U.S.C. § 1151. In relevant part, the statute provides:
 "[T]he term `Indian country' . . . means (a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government . . ., (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same."
 Although this definition by its terms relates only to federal criminal jurisdiction, we have recognized that it also generally applies to questions of civil jurisdiction such as the one at issue here.FN1
 FN1. Generally speaking, primary jurisdiction over land that is Indian country rests with the Federal Government and the Indian tribe inhabiting it, and not with the States.
Id. at 526-27 (citations omitted). In Native Village the Court specifically found that in enacting 18 U.S.C. § 1151
Congress intended to codify the common law that had developed regarding what constituted Indian country, reasoning:
 In each of these cases, therefore, we relied upon a finding of both a federal set-aside and federal superintendence in concluding that the Indian lands in question constituted Indian country and that it was permissible for the Federal Government to exercise jurisdiction over them. Section 1151 does not purport to alter this definition of Indian country, but merely lists the three different categories of Indian country mentioned in our prior cases: Indian reservations, see Donnelly v. United States, 228 U.S. 243, 269, 33 S.Ct. 449, 458, 57 L.Ed. 820 (1913); dependent Indian communities, see United States v. McGowan, supra, at 538-539, 58 S.Ct., at 287-288; United States v. Sandoval, supra, at 46, 34 S.Ct., at 5-6; and allotments, see United States v. Pelican, supra, at 449, 34 S.Ct., at 399. The entire text of § 1151(b), and not just the term "dependent Indian communities," is taken virtually verbatim from Sandoval, which language we later quoted in McGowan. See United States v. Sandoval, supra, at 46, 34 S.Ct., at 5-6; United States v. McGowan, supra, at 538, 58 S.Ct., at 287-288. Moreover, the Historical and Revision Notes to the statute that enacted § 1151 state that § 1151's definition of Indian country is based "on [the] latest construction of the term by the United States Supreme Court in U.S. v. McGowan . . . following U.S. v. Sandoval. (See also Donnelly v. U.S.). . . . Indian allotments were included in the definition on authority of the case of U.S. v. Pelican." See Notes to 1948 Act, following 18 U.S.C. § 1151, p. 276 (citations omitted).
Id. at 530. For the federal government to provide superintendence over the land it must validly act in accordance with authority granted by Congress. Kansas v. United States,249 F.3d 1213, 1229-30 (10th Cir. 2001).
¶ 6 United Keetoowah Band v. Mankiller, 2 F.3d 1161,1993 WL 307937 (unpublished opinion) (10th Cir. 1993) involved an appeal by the UKB to the Tenth Circuit after losing its claim in the Eastern District of Oklahoma that Cherokee Nation officials had no authority to regulate UKB smokeshops located on Cherokee allotments. The Tenth Circuit affirmed the lower court's holding that the Cherokee Nation was an indispensable party and its sovereign immunity barred its nonconsensual joinder to the suit.Id. at *5.
¶ 7 In United Keetoowah Band, the Cherokee Nation Tax Commission ordered that unlicensed tobacco, being sold by UKB members from Cherokee Nation restricted allotments, be seized.Id. at *3. After the seizure, the UKB brought the action on behalf of its members, claiming it had jurisdiction over its members on restricted land. Id.
¶ 8 The Tenth Circuit affirmed the district court's dismissal of the case and used the trial court's reasoning in its decision.Id. at *2. The Northern District of Oklahoma noted that, "The court has previously determined in prior cases that the Cherokee Nation's sovereignty is preeminent to that of the UKB in Cherokee Nation Indian Country." Id. Further, "This court has previously decided that the Cherokee Nation is the only tribal entity with jurisdictional authority in Indian Country within the Cherokee Nation." Id. at * 4. Based on the earlier decisions, the Tenth Circuit affirmed the Northern District's decision that stated that the UKB does not have any jurisdiction over Indian Country within the Cherokee Nation. Id.
¶ 9 In O'Bregon v. Oklahoma Tax Commission, 20 P.3d 175
(Okla.Ct.App. 2001), the Oklahoma Court of Civil Appeals ruled that a Kaw tribal member who worked in Indian country was not exempt from state income taxation because she did not live in "Indian country":
 While the State of Oklahoma may not assess tax on a tribal member's income where the member both lives within" Indian Country" and earns the income within "Indian Country," the State of Oklahoma may assess tax on the income of any person residing outside "Indian Country."
Id. at 176 (citation omitted). A stipulated fact indicated the taxpayer resided in a "Mutual Help Home situated within the boundaries of a federally defined Tribal service area; administered by the Housing Authority of the Kaw Nation; but operated pursuant to the Oklahoma Housing Authority Act, 63 O.S.1991 § 1051[63-1051] et seq." Id. Based upon this fact, the court concluded the taxpayer did not reside in "Indian country."
¶ 10 We can find no reported decision where a court held the UKB holds land constituting "Indian country" under18 U.S.C. § 1151.[1] Also we can find no reported decision where a court has held that UKB land has been set apart for its use under the superintendence of the government. Our review of the records in the Oklahoma Secretary of State's office indicates there is no Tribal-State Motor Vehicle Licensing Compact between the UKB and the State of Oklahoma.[2] [3] The issue of what constitutes "Indian country" is a question of fact that cannot be answered by an Attorney General Opinion. 74 O.S. 2001, §18b[74-18b] (A)(5).
¶ 11 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. A federally recognized Indian tribe with land constituting" Indian country" may issue motor vehicle licenses to its members who live and garage their vehicles in Indian country. Okla. Tax Comm'n v. Sac and Fox Nation, 508 U.S. 114, 128 (1993).
 2. No reported case indicates the United Keetoowah Band of Cherokee Indians has land constituting "Indian country" and no reported case indicates the United Keetoowah Band of Cherokee Indians has land set apart for its use under the superintendence of the government; however, this is ultimately a question of fact, which pursuant to 74 O.S. 2001, § 18b(A)(5), cannot be answered in an Attorney General Opinion. Buzzard v. Okla. Tax Comm'n, 992 F.2d 1073, 1075 (10th Cir. 1993).
 3. An Indian tribe without land constituting "Indian country" may not issue motor vehicle licenses to its members. Okla. Tax Comm'n v. Sac and Fox Nation,
508 U.S. 114, 128 (1993).
W.A. DREW EDMONDSON Attorney General of Oklahoma DAVID L. KINNEY Assistant Attorney General
[1] Currently in the United States Eastern District of Oklahoma, the issue of "Indian country" is a factual dispute in the case of United Keetoowah Band v. State ex. rel., TimKuykendall, CIV 04-340 WH.
[2] The only Tribal-State Motor Vehicle Licensing Compact on file with the Oklahoma Secretary of State is between the Cherokee Nation and the State of Oklahoma. See Tribal-State Motor Vehicle Licensing Compact, Oct. 1, 2002, Okla.-Cherokee Nation.
[3] Two United Keetoowah Band of Cherokee Indians in Oklahoma contract/compacts are on file with the Oklahoma Secretary of State. See Motor Fuels Contract, Sept. 30, 1999, Okla.-United Keetoowah Band; Tobacco Tax Compact, Dec. 16, 1999, Okla.-United Keetoowah Band.