321 F.2d 767
 PRAIRIE BAND OF the POTTAWATOMIE TRIBE OF INDIANS, Mrs.
Minnie Evans, Whose Indian Name Is Minnie Weshkeenoo, John
P. Wahwassuck, Alfred Curtis Pequano, James P. Wabnosah,
William Hale and James Keggamege, a/k/a James Keg, Appellants,
v.
Mage N. PUCKKEE, Frank Nioche, James Kabance, John Shoptese,
Peter Matchee, Eugene Grinmell, Philip Burns, Stewart L.
Udall, Secretary of Interior, John Crow, Commissioner of
Indian Affairs, and Buford Morrison, Area Field
Representative, Appellees.
 No. 7243.
 United States Court of Appeals Tenth Circuit.
 Aug. 7, 1963.
 
 Sam A. Crow, Topeka, Kan. (J. A. Dickinson, Ralph Skoog and Bill G. Honeyman, Topeka, Kan., with him on brief), for appellants.
 Richard N. Countiss, Washington, D.C., Atty., Dept. of Justice (Ramsey Clark, Asst. Atty. Gen., Newell A. George, U.S. Atty., Elmer Hoge, Asst. U.S. Atty., and Roger P. Marquis, Atty., Dept. of Justice, with him on brief), for appellees.
 Before MURRAH, Chief Judge, LEWIS, Circuit Judge, and DOYLE, District judge.
 MURRAH, Chief Judge.
 
 
 1
 Certain members of the 'Prairie Band' of the Pottawatomie Indians brought this suit, against other named members of the same Bond, the Secretary of Interior, Commissioner of Indian Affairs, and an Area Field Representative.[1] The suit seeks a declaration of complainants' rights in Congressionally appropriated funds, in payment of a money judgment of the Indian Claims Commission, in favor of the Pottawatomie Nation. Diversity jurisdiction is not asserted, and the trial Court dismissed the suit, as one not involving a substantial Federal question under 28 U.S.C. 1331, nor over which Federal jurisdiction is conferred by any other Act of Congress. We agree with the trial Court.
 
 
 2
 The pertinent facts are that the Indian Claims Commission rendered a judgment in favor of the Pottawatomie Indians, for additional compensation to the Nation, for lands ceded to the United States. In its opinion, the Commission concluded that 'the petitioner Pottawatomie Nation, as created by the treaty of June 5, 17, 1846, and as it then existed, is entitled to an award for the benefit of all descendants of said Nation as it was constituted and recognized in said treaty * * *.' 4 Ind.Cl.Comm.Repts. 409. Thereafter, Congress appropriated money for payment of said judgment, i.e., see: Act of Sept. 8, 1960, 74 Stat. 830, and subsequently authorized the expenditure of the appropriated funds, 'for any purpose that is authorized by the respective tribal governing bodies and approved by the Secretary of the Interior. * * *' See: Act of Sept. 6, 1961, 75 Stat. 474.[2]
 
 
 3
 Thereafter, the Prairie Band duly resolved to prepare a tribal membership roll, '* * * for the purpose of listing those persons who shall be eligible to share in the judgment money.' The resolution provided that the roll, 'shall consist of the original Prairie Band of Kansas at present living as of midnight December 1, 1960 and the decendants by blood of all original Prairie Band of Pottawatomie allottees living as of midnight December 1, 1960 * * *.'
 
 
 4
 The specific allegations with respect to the Federal nature of the claim are not entirely clear, but as we read them, they are to the effect that the suit involves a controversy between these complainants, on the one hand, and the Secretary of Interior, the Commissioner of Indian Affairs, and other named Indian defendants, on the oher, concerning the construction and effect of the judgment of the Indian Claims Commission; and, that these complainants will be adversely affected, jointly and severally, by the construction and effect given said judgment by the Secretary, Commissioner, and the defendant Indians. As a further ground of Federal jurisdiction, based on a Federal Question, it is alleged that the suit directly involves the construction of the Act of Congress, appropriating funds for the satisfaction of the Commission's judgment; that the complainants' rights in such funds depend upon the construction to be given that appropriation Act; and, that the suit is for a declaratory judgment, determining the respective rights of the parties in the judgment, and the appropriated funds.
 
 
 5
 Claimants first invoke 28 U.S.C. 1353, which confers original jurisdiction upon the Federal courts of 'any civil action involving the right of any person (of Indian blood) * * * to any allotment of land under any Act of Congress or treaty.' But, as the trial Court stated, '* * * Section 1353 was enacted for a rather narrow and specific purpose, i.e., to give district courts jurisdiction over claims of right to 'original allotments,' or * * * allotments in the 'first instance' * * *.' And see: Henrietta First Moon v. Starling White Tail, 270 U.S. 243, 46 S.Ct. 246, 70 L.Ed. 565; and Gerard v. United States, 9 Cir., 167 F.2d 951. This suit, in no way involves the right to 'any allotment of land under any Act of Congress or treaty,' and Federal jurisdiction cannot, therefore, be sustained under this Act.
 
 
 6
 Federal jurisdiction of the claim cannot be sustained under28 U.S.C. 1331, on the bare allegation that it '* * * arises under the Constitution, laws or treaties of the United States.' For 'a suit does not so arise unless it really and substantially involves a dispute or controversy respecting the validity, construction or effect (of Federal law) upon the determination of which the result depends.' Shulthis v. McDougal, 225 U.S. 561, 569, 32 S.Ct. 704, 706, 56 L.Ed. 1205; Gully v. First National Bank,299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70; Viles v. Symes, 10 Cir., 129 F.2d 828; Martinez v. Southern Ute Tribe, 10 Cir., 249 F.2d 915; and Martinez v. Southern Ute Tribe, 10 Cir., 273 F.2d 731. A genuine and substantial Federal Question must be stated, and the Court will look beyond the naked allegations of the complaint, to determine whether the asserted claim is controlled or conditioned by Federal law. See: Polhemus v. American Medical Ass'n., 10 Cir., 145 F.2d 357.
 
 
 7
 The fact that a suit involves the construction and effect of a judgment of a Federal court or tribunal does not, for that reason, make it one arising under the Constitution or laws of the United States. See: Moore v. Central R. Co. of New Jersey, 2 Cir., 185 F.2d 369; and Metcalf v. Watertown, 128 U.S. 586, 9 S.Ct. 173, 32 L.Ed. 543. The Commission's judgment undoubtedly has its origin in Federal law, in the sense that it was authorized and promulgated thereunder. But, the suit does not purport to involve the construction and effect of the Federal statute which authorized the judgment, or under which it was rendered. Rather, it seeks a declaration of the rights of the parties, under a judgment, the execution of which is in no way controlled or conditioned by the Federal statute. Cf. International Ass'n. of Machinists v. Central Airlines, 372 U.S. 682, 83 S.Ct. 956, 10 L.Ed.2d 67. The appropriation Act specifically provides that the funds '* * * may be advanced or expended for any purpose that is authorized by the respective tribal governing bodies and approved by the Secretary of the Interior. * * *' Indeed, the complaint does so allege. The Act does not purport to control or condition the distribution of the funds.
 
 
 8
 In essence, this is a private civil dispute between Indians of the same Tribe and Band, concerning the method and procedure for distribution of the proceeds of a judgment, which have become tribal funds, to be distributed under authority of the tribal governing body. It is an intra-tribal controversy, over which Federal court jurisdiction has been traditionally denied. See: Martinez v. Southern Ute Tribe, 10 Cir., 249 F.2d 915; Native American Church v. Navajo Tribal Council, 10 Cir., 272 F.2d 131; and Dicke v. Cheyenne-Arapaho Tribes, 10 Cir., 304 F.2d 113.
 
 
 9
 For the first time, on appeal, claimants invoke the recently enacted statute, which confers original jurisdiction upon Federal courts '* * * to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.' 28 U.S.C. 1361. Suffice it to say, that neither the Secretary of Interior nor the Commissioner of Indian Affairs are parties to this suit. They are undoubtedly indispensable parties. See: Williams v. Fanning, 332 U.S. 490, 68 S.Ct. 188, 92 L.Ed. 95. And, moreover, any relief to be granted under this statute must surely originate in the trial court.
 
 
 10
 The judgment is affirmed.
 
 
 
 [1]
 The Secretary of Interior and the Commissioner of Indian Affairs are named defendants, but have not been served
 
 
 [2]
 By the treaty of Nov. 15, 1861, 12 Stat. 1191, the Pottawatomie Nation was divided into two Bands-- the Citizens Band, which was removed to Oklahoma, and the Prairie Band, which remained in Kansas. The Commission's judgment was for the benefit of both Bands, and was divided on the basis of 780/2180ths to the Prairie Band and 1400/2180ths to The Citizens Band, and the money was appropriated accordingly. This suit is between members of the Prairie Band, and in no way involves the Citizens Band's portion of the judgment