**Victor FONTENELLE et al., Appellees,**

v.

**OMAHA TRIBE OF NEBRASKA, United States of America, et al., Appellants.**

**No. 19833.**

United States Court of Appeals, Eighth Circuit.

Aug. 28, 1970.

Charles N. Woodruff, Atty., Dept. of Justice, Washington, D. C., for appellants; Shiro Kashiwa, Asst. Atty. Gen., and Roger P. Marquis and Edmund B. Clark, Attys., Dept. of Justice, Washington, D. C., and Richard A. Dier, U. S. Atty., Omaha, Neb., on brief.

John J. Powers, White, Lipp, Simon & Powers, Omaha, Neb., for appellees; Ralph M. Anderson, Tekamah, Neb., on brief.

Before MEHAFFY, HEANEY and BRIGHT, Circuit Judges.

HEANEY, Circuit Judge.

This is an appeal from a judgment quieting title in the plaintiffs against the United States and the Omaha Tribe of Nebraska to certain lands between the present channel of the Missouri River and its east meander line, as established by the official survey of 1867. We affirm.

The Omaha Reservation was created by a treaty in 1854 under which the Omaha Tribe ceded to the United States certain lands in Nebraska and, in turn, was granted a reservation. The eastern border of the reservation was designated as the Missouri River. The official survey of 1867 established the eastern boundary of the reservation as the east meander line of the Missouri River. After the official survey was completed, Congress provided for the allotment of reservation lands to individual members of the tribe. Plaintiffs' predecessors in title received trust patents in 1884 and 1900, and fee patents in 1912 and 1924. Portions of these grants by patent included land which bordered on the Missouri River.

Subsequently, the Missouri River receded from its east meander line as established by the official survey. The plaintiffs claimed that the lands lying east of their lots and extending to the present channel of the Missouri River were owned by them by virtue of accretion.

The plaintiffs brought a quiet title action against the Omaha Tribe and against the United States as trustee for the Tribe in the United States District Court for the District of Nebraska. The defendant United States moved to dismiss the action against it on the grounds that it had not waived its sovereign immunity. The District Court overruled the motion stating that the approval by the Secretary of Interior of a "sue and be sued" clause in Section 5[i] of the Tribe's Corporate Charter provided the necessary consent for the United States to be joined as a defendant in a suit properly instituted against the Tribe. In their answer to the plaintiffs' complaint, the defendants United States and Omaha Tribe contended that the defendant Omaha Tribe had not consented to a quiet title action under Section 5[i] of its Corporate Charter. After reserving ruling on this latter motion, the District Court stated in its memorandum that Section 5[i] of the Corporate Charter supplied the necessary consent. See, Fontenelle v. Omaha Tribe of Nebraska, 298 F.Supp. 855, 858 (D.Neb.1969).

The defendants renew the contentions made at trial on appeal and additionally urge that the District Court reached an incorrect decision on the merits. The plaintiffs argue that we need not reach the question of the District Court's jurisdiction over the United States as it is not an indispensable party.

 We consider and reject the plaintiffs' contention that the United States is not an indispensable party. First, it is conceded that the lands of the Omaha Tribe are held for the Tribe's perpetual occupancy by the United States as trustee. Treaty with the Omaha, 1854, Indian Affairs, Laws and Treaties, Vol. II, p. 611 (1904). See, Northwestern Bands of Shoshone Indians v. United States, 324 U.S. 335, 338, 65 S.Ct. 690, 89 L.Ed. 985 (1945); First Nat. Bank of Decatur, Neb. v. United States, 59 F.2d 367, 368 (8th Cir. 1932). It is clear that a proceeding against Indian lands in which the United States has an interest is a proceeding against the United States. Minnesota v. United States, 305 U.S. 382, 386, 59 S.Ct. 292, 83 L.Ed. 235 (1939). Second, 25 U.S.C. § 345, the statute under which this action was brought, clearly provides that the United States shall be a party defendant:

" * * * [I]n said suit the parties thereto shall be the claimant as plain-

tiff and the United States as party defendant * * *."

25 U.S.C. § 345. See, Hy-Yu-Tse-Mil-Kin v. Smith, 194 U.S. 401, 413, 24 S.Ct. 676, 48 L.Ed. 1039 (1904).

In support of their contention, the plaintiffs rely on Ickes v. Fox, 300 U.S. 82, 57 S.Ct. 412, 81 L.Ed. 525 (1937). *Ickes*, however, did not involve Indian lands, and, moreover, the United States did not have an interest in the property rights in question.

We next consider whether the United States waived its immunity to suit.

■ The general rule is that the United States may not be sued without its consent. It is clear, however, that Congress may waive the defense of sovereign immunity by providing the necessary consent. We feel they have done so here through 25 U.S.C. § 345 which states in part:

> "All persons who are in whole or in part of Indian blood or descent who are entitled to an allotment of land under any law of Congress, or who claim to be so entitled to land under any allotment act or under any grant made by Congress, *or who claim to have been unlawfully denied or excluded from any allotment or any parcel of land to which they claim to be lawfully entitled by any Act of Congress,* may commence and prosecute or defend any action, suit, or proceeding in relation to their right thereto in the proper district court of the United States. * * *" (Emphasis added.)

■ The Supreme Court stated that this section, first enacted in 1894, gives the federal District Courts jurisdiction to determine whether the Secretary of Interior has unlawfully denied an Indian a parcel of land that has been allotted to him, and to determine whether the allottee is being deprived of rights acquired through his allotment. Arenas v. United States, 322 U.S. 419, 432, 64 S.Ct. 1090, 88 L.Ed. 1363 (1944). See also, United States v. Payne, 264 U.S. 446, 44 S.Ct. 352, 68 L.Ed. 782 (1924); Hy-Yu-Tse-Mil-Kin v. Smith, *supra*; United States

v. Pierce, 235 F.2d 885 (9th Cir. 1956); Gerard v. United States, 167 F.2d 951 (9th Cir. 1948). The section, however, does not give federal District Courts the right to determine Indian land policy. Arenas v. United States, *supra*, 322 U.S. at 432, 64 S.Ct. 1090. See also, Motah v. United States, 402 F.2d 1 (10th Cir. 1968); Harkins v. United States, 375 F.2d 239 (10th Cir. 1967); United States v. Preston, 352 F.2d 352 (9th Cir. 1965); Prairie Band of Pottawatomie Tribe of Indians v. Puckkee, 321 F.2d 767 (10th Cir. 1963); United States v. Eastman, 118 F.2d 421 (9th Cir.), cert. denied, 314 U.S. 635, 62 S.Ct. 68, 86 L.Ed. 510 (1941). The Supreme Court recognized in making the distinction that "judicial examination" would be necessary to separate right from policy. Arenas v. United States, *supra*, 322 U.S. at 432, 64 S.Ct. 1090.

■■ Examination convinces us that this action is one to determine the plaintiffs' right to the ownership of specific land under an allotment and is thus within the jurisdiction of the District Court to hear and determine. The plaintiffs' right to the ownership of the disputed land is to be decided under general rules of law and is in no way to be determined by Indian land policies established by the Department of Interior.

We recognize that the view expressed in this opinion is contrary to that expressed in Seifert v. Udall, 280 F.Supp. 443 (D.Mont.1968), but we feel that the *Seifert* court erred in following Henrietta First Moon v. Starling White Tail, 270 U.S. 243, 46 S.Ct. 246, 70 L.Ed. 565 (1926); Prairie Band of Pottawatomie Tribe of Indians v. Puckkee, *supra;* and, United States v. Eastman, *supra*, rather than United States v. Pierce, *supra*, and Gerard v. United States, *supra*.

*Puckkee* and *Eastman* can be distinguished on the grounds that neither involved questions of legal right of an allottee to a particular parcel of land and that both involved questions of Indian land policy. In *Puckkee*, members of the

Prairie Band of Pottawatomie Tribe brought an action against other members of the same band, the Secretary of Interior and others seeking a declaration of their rights in Congressionally appropriated funds in the payment of a money judgment in the Indian Claims Commission of the Pottawatomie Nation. In *Eastman*, six Indian allottees brought a class action seeking a declaration that the Indians had authority without restriction to dispose of timber on their allotments, and that the regulations of the Secretary of Interior relating to said sales were without legal recourse.

Henrietta First Moon v. Starling White Tail, *supra*, 270 U.S. at 244, 46 S.Ct. at 246, turns on a statute which provided:

"That when any Indian to whom an allotment of land has been made, or may hereafter be made, dies before the expiration of the trust period and before the issuance of a fee simple patent, without having made a will disposing of said allotment as hereinafter provided, the Secretary of the Interior, upon notice and hearing, under such rules as he may prescribe, shall ascertain the legal heirs of such decedent, and his decision thereon shall be final and conclusive."

Act of June 25, 1910, chap. 431, 36 Stat. at L. 855, Comp.Stat. § 4226, 3 Fed.Stat. Anno.2d ed. p. 853.

■ The defendants also contend on appeal that the Omaha Tribe is immune from suit by virtue of a provision in the Tribe's Corporate Charter. We cannot agree.

Section 5[i] of the Corporate Charter provides as follows:

"To sue and be sued in courts of competent jurisdiction within the United States; but the grant or exercise of such power to sue and to be sued shall not be deemed a consent by the said Tribe or by the United States to the levy of any judgment, lien or attachment upon the property of the tribe other than income or chattels specially pledged or assigned."

The defendants concede that a quiet title action is not a "levy of any judgment, lien or attachment," but they contend that the intent of the exception is to protect the property of the Tribe from being dissipated, without regard to legal niceties or technicalities. They rely on Maryland Cas. Co. v. Citizens Nat. Bank of West Hollywood, 361 F.2d 517 (5th Cir. 1966). That case does not support the plaintiffs' contention, however, as it involved a garnishment action which clearly was within the purview of the exception to suit.

Here, we are concerned simply with a quiet title action. By adopting a provision in its Corporate Charter consenting to sue and be sued, the Omaha Tribe has rendered itself amenable to a quiet title action.

■ Finally, the defendants contend that the District Court erred in its decision on the merits. We cannot agree.

The District Court found that there had been no error in the establishment of the meander line by the official survey and plat. The court applied the general rule that land added by accretion to tracts which were riparian at the time of the official survey and plat is the property of the riparian owner. Jefferis v. East Omaha Land Company, 134 U.S. 178, 10 S.Ct. 518, 33 L.Ed. 872 (1890); Choctaw and Chickasaw Nations v. Cox, 251 F.2d 733 (10th Cir. 1958); Choctaw and Chickasaw Nations v. Seay, 235 F.2d 30 (10th Cir.), cert. denied, 352 U.S. 917, 77 S.Ct. 216, 1 L.Ed.2d 123 (1956). See also, Nebraska v. Iowa, 143 U.S. 359, 12 S.Ct. 396, 36 L.Ed. 186 (1892).

The defendants argue that the general rule does not apply where the intention of the parties is to limit the patents to the precise acreage stated in the patent. First Nat. Bank of Decatur, Neb. v. United States, *supra*. They also argue that the grantee cannot receive accretion lands if he receives more acreage than he is reasonably entitled to expect for what he paid. Walton v. United States, 415 F.2d 121 (10th Cir. 1969).

**148**

The authorities relied on by the defendants are not controlling here. First Nat. Bank of Decatur, Neb. v. United States, *supra*, is easily distinguishable since the lands in question there were not riparian at the time of the official survey and plat, and since the lands were regular fractions of sections and not irregular lots. Walton v. United States, *supra*, also is inapplicable. There, the Court found a gross discrepancy between the meander line shown on the official plats and the actual water line at the time of the survey. The Court, therefore, applied the legal principles relating to omitted lands rather than those applicable to accreted lands.

The judgment of the District Court is affirmed.