**MULTIMEDIA GAMES, INC., A**
Texas corporation, Plaintiff,

v.

**WLGC ACQUISITION CORP.** (a/k/a Worldlink Gaming Corp.) an Oklahoma corporation, Miami Tribe of Oklahoma Business Development Authority, a Miami Tribe of Oklahoma Corporation, Magellan Resources Group, A Canadian Corporation, Magellan Gaming Technologies, Inc., a Canadian Corporation, Ron Harris, an individual, and Nelson Johnson, an individual, Defendants.

No. 99–CV–0723C.

United States District Court,
N.D. Oklahoma.

April 18, 2001.

Donald Lee Kahl, John Frederick Heil, III, Hall, Estill, Hardwick, Gable, Golden & Nelson, Tulsa, OK, Heather Elizabeth Brown, Williams Companies, Inc., Tulsa, OK, for plaintiff.

Frederick C. Cornish, Harlan Sykes Pinkerton, Jr., Fred C. Cornish, Inc., Tulsa, OK, for Magellan Resources Group and Magellan Gaming Technologies, Inc.

Clark Otto Brewster, Michael L. Barkett, Brewster & De Angelis, PLLC, Tulsa, OK, Daniel Brent Graves, Shallcross, Graves & Assoc., Tulsa, OK, for Ron Harris, Nelson Johnson, and Miami Tribe of Oklahoma Business Development Authority.

## ORDER

H. DALE COOK, Senior District Judge.

Before the Court is the motion for summary judgment filed by defendants, Ron Harris ("Harris"), Nelson Johnson ("Johnson"), and the Miami Tribe of Oklahoma Business Development Authority ("MBDA") (collectively referred to as "de-

fendants"), pursuant to Rules 19 and 56 of the Federal Rules of Civil Procedure. Plaintiff Multimedia Games ("Multimedia") has sued for alleged copyright infringement, misappropriation of trade secrets, unfair and deceptive trade practices, breach of contract, conversion, breach of fiduciary duty, and unfair competition. Federal jurisdiction was established under 28 U.S.C. §§ 1331, 1338, and 1367. Multimedia seeks injunctive, declaratory, and monetary relief against all defendants as well as those in active concert or privity with defendants. Defendants contend that there exists no genuine issue of material facts and that they are entitled to summary judgment as a matter of law.

On February 18, 2000, defendants filed their motion for summary judgment. Plaintiff filed its response on June 7, 2000, and defendants filed their reply on June 19, 2000. On November 16, 2000, this Court struck the previous scheduling order setting forth pretrial deadlines in order to properly consider the motion for summary judgment. After consideration of the briefs, exhibits, arguments of the parties and applicable law, the Court finds and concludes as follows:

### Undisputed Statement of Facts

1. Multimedia is a Texas Corporation having its principal place of business in Tulsa, Oklahoma. Its business concerns designing, developing, marketing, maintaining, and operating various computer based gaming equipment and software.

2. On March 15, 1999, Worldlink Gaming Corporation merged with and into WLGC Acquisition Corporation.

3. MBDA is a corporation formed under the laws of the Miami Tribe of Oklahoma and is the surviving entity following a corporate merger with WLGC Acquisition Corp. (a/k/a Worldlink Gaming Corp.) ("Worldlink").

4. Harris is a resident of Tulsa and until September 1996, was a sales manager of the Electronic Games Division of Multimedia. Harris later became a principal of Worldlink and now serves as principle of MBDA.

5. Johnson is a resident of Tulsa and until September 1996, was the President of MegaBingo, a wholly owned subsidiary of Multimedia. Johnson was later affiliated with and employed by Worldlink, and now serves as a principal of MBDA.

6. Johnson and Harris had access to a computer and certain company information when they were employees of Multimedia.

7. Upon leaving Multimedia, Harris, Johnson, and other former Multimedia employees started Worldlink, an Oklahoma corporation incorporated on September 18, 1996.

### Allegations of the Parties

Multimedia alleges that all defendants have infringed and continue to infringe Multimedia's copyright related to the subject work by producing, distributing, and placing upon the market products which contain direct copies of Multimedia's copyright subject work. Multimedia further contends that Harris and Johnson owed it a fiduciary duty and violated that duty by converting the proprietary and confidential information of Multimedia for their own benefit. Furthermore, Multimedia claims that Harris and Johnson have and continues to wrongfully exercise dominion over Multimedia's property without permission from and to the detriment of Multimedia. This alleged conversion and misappropriation of property is claimed by Multimedia to constitute breaches of implied contractual terms existing between defendants Harris and Johnson and plaintiff Multimedia. Additionally, Multimedia contends that Harris and Johnson's alleged misappropriation and unauthorized use of Mul-

timedia's trade secrets are in violation of the Oklahoma Trade Secrets Act. Finally, Multimedia argues that all defendants' actions constitute unfair competition and deceptive trade practices in violation of the Oklahoma Deceptive Trade Practices Act and the common law of Oklahoma.

Defendants claim that the MBDA is immune from the lawsuit under the doctrine of tribal sovereign immunity; and thus, defendants contend that this Court lacks jurisdiction over the MBDA, as it is a sovereign tribal entity. Furthermore, defendants claim that the MBDA is a necessary and indispensable party to the lawsuit under Rule 19 of the Federal Rules of Civil Procedure ("Rule 19"). Defendants further contend that because the MBDA is a necessary and indispensable party which cannot be sued because of the tribal sovereign immunity, the case cannot proceed against any defendant without the MBDA. Additionally, defendants argue that any alleged infringement or misappropriated property was: 1) not properly registered, 2) misused by plaintiff, 3) not copyrightable material, 4) abandoned, or 5) within the public domain.

### Standard of Review

The standard for granting summary judgment is rather strict. In considering a motion for summary judgment, the Court "has no real discretion in determining whether to grant summary judgment." *U.S. v. Gammache,* 713 F.2d 588, 594 (10th Cir.1983). The Court must view the pleadings and documentary evidence in the light most favorable to the nonmovant, *See Cone v. Longmont United Hosp. Ass'n,* 14 F.3d 526, 527–28 (10th Cir.1994), and summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." Fed. R.Civ.P. 56(c). "A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Akin v. Ashland Chemical Co.,* 156 F.3d 1030, 1034 (10th Cir.1998). " '[T]he moving party carries the burden of showing beyond a reasonable doubt that it is entitled to summary judgment.' " *Hicks v. City of Watonga,* 942 F.2d 737, 743 (10th Cir.1991) (quoting *Ewing v. Amoco Oil Co.,* 823 F.2d 1432, 1437 (10th Cir.1987)). However, once the moving party meets its burden, the burden then shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter. *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). The "party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but … must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted).

### Discussion

In this action, defendants argue that plaintiff's claims against them fail as a matter of law. Their contention is based on the fact that one of the defendants, which is allegedly sovereignly immune, is also a necessary and indispensable party as prescribed by Rule 19. Defendants argue that because the MBDA, as a tribal economic enterprise, is allegedly immune from suit, the case cannot proceed without them and, accordingly, defendants are entitled to summary judgment in their favor.

 It has been a part of this nation's long-standing tradition that Indian tribes possess common-law sovereign immunity from suit akin to that enjoyed by other sovereigns. *See Clara Pueblo v. Martinez,* 436 U.S. 49, 58, 98 S.Ct. 1670, 56 L.Ed.2d 106; *see also National Union Ins. Cos.,*

*Lodge Grass School Dist. No. 27 v. Crow Tribe,* 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985) (finding that Indian tribes and the federal government are dual sovereigns and occupy a unique status under the law). Furthermore, Supreme Court precedent establishes that tribal corporate and economic entities created by the Indian Nation to further governmental objectives possess attributes of tribal sovereignty and cannot be sued absent an immunity waiver. *See Kiowa Tribe of Oklahoma,* 523 U.S. at 757–58, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998), *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996).

A tribe's sovereign status is directly related to its ability to generate revenues through the regulation of commercial activities on the reservation. The ability to contract as an economic entity impacts the tribe's fiscal resources by binding or obligating the funds of the tribe. It follows that corporate contractual provisions are actually economic matters which directly affect a sovereign's right of self government. In this way, the business entity is simply the tribe's alter ego; and thus, the real party in interest is the tribe because the vulnerability of the tribe's coffers is at issue when contracting in a commercial environment.

 This Court holds that the MBDA is an arm of the Miami tribal government and possesses attributes of tribal sovereignty that preclude suit against it absent a waiver of immunity. Because the MBDA is a subordinate economic enterprise and political subdivision of the Miami Tribe which was created to develop business activities, the MBDA possesses sovereign immunity inasmuch as the tribe itself. *See* Defendant's Exhibit C. To hold that the MBDA has sovereign immunity in this context is not to make an innovative yet prohibited extension of the doctrine of tribal sovereign immunity, it is merely preserving that doctrine which has been upheld by Congress and superior courts in the past. As a general rule, Indian tribes possess those sovereign powers neither divested of them by treaty, waiver, act of Congress, nor inconsistent with the superior status of the United States. *See United States v. Wheeler,* 435 U.S. 313, 323, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978).

Where the language of a federal statute does not explicitly assert jurisdiction over tribal entities or implicitly by including tribes in the definition of parties subject to the suit, courts find the language insufficient to express an unequivocal congressional abrogation of tribal sovereign immunity. *See Bassett v. Mashantucket Pequot Tribe,* 204 F.3d 343, 357–58 (2d Cir.2000), *Florida Paraplegic, Association, Inc. v. Miccosukee Tribe of Indians of Florida,* 166 F.3d 1126, 1131 (11th Cir.1999). Although federal courts have exclusive jurisdiction over causes of action arising under the federal copyright laws, this Court finds that the text of the Copyright Act of 1976 and the accompanying legislative history of the statute did not affirmatively contemplate the inclusion of Indian tribes, and thus, the abrogation of tribal sovereign immunity as to this cause of action. *See* 17 U.S.C. § 505.

Although the Supreme Court established forty years ago that a statute of general and broad application applies to all persons, including Indian tribes, *Federal Power Comm'n v. Tuscarora Indian Nation,* 362 U.S. 99, 116, 80 S.Ct. 543, 4 L.Ed.2d 584 (1960), this dictum [1] has since been abrogated and numerous federal courts of appeal have rejected it through subsequent

---

1. *See Equal Opportunity Comm. v. The Cherokee Nation,* 871 F.2d 937 (10th Cir.1989) (holding that the Tuscarora rule is fundamentally dictum).

action. In 1982, the Tenth Circuit questioned the continued application of what has become known as the *Tuscarora* rule in light of the United State Supreme Court's subsequent decision in *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 102 S.Ct. 894, 71 L.Ed.2d 21 (1982). *See Donovan v. Navajo Forest Products Industries*, 692 F.2d 709, 712 (10th Cir.1982). In essence, the Tenth Circuit found that the Supreme Court in *Merrion* impliedly overruled or restricted its own *Tuscarora* rule by holding "that an Indian tribe's power to exclude non-Indians from tribal lands is an *inherent attribute* of tribal sovereignty, essential to a tribe's exercise of self-government and territorial management." *Donovan*, 692 F.2d at 712 (emphasis added). Additionally, the Tenth Circuit, along with other lower federal courts, has recognized three major exceptions to the *Tuscarora* rule, further weakening whatever remains of the *Tuscarora* dictum. *See R.H. Nero v. Cherokee Nation of Oklahoma*, 892 F.2d 1457, 1462 (10th Cir.1989).

██ Thus, application of federal statutes to Indian tribes must be viewed in light of the federal policies which promote "tribal self-government, self-sufficiency, and economic development." *Oklahoma Tax Comm. v. Citizen Band Potawatomi Indian Tribe of Okla.*, 498 U.S. 505, 505–06, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991). "The bare proposition that broad general statues have application to Native American tribes does not squarely resolve whether there was an abrogation of tribal immunity ..." *Sanderlin v. Seminole Tribe of Florida*, 243 F.3d 1282 (11th Cir. 2001). Case law since *Tuscarora* has made clear that any supposed sovereign immunity abrogation by the government or the tribe must be explicit and unequivocal. *See e.g. Florida Paraplegic Ass'n*, 166 F.3d at 1130–134 (holding that the lack of reference to Indian tribes meant that the

broadly applicable statute did not abrogate tribal sovereign immunity notwithstanding *Tuscarora* ). Because Indian tribes retain all aspects of tribal sovereignty not specifically withdrawn, *See Donovan*, 692 F.2d at 712 (citing *United States v. Wheeler*, 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978)), a court's reliance upon the *Tuscarora* dictum that "general statutes of the United States apply to Indians and non-Indians alike, is misplaced." *United States v. Winnebago Tribe of Neb., et. al.*, 542 F.2d 1002 (8th Cir.1976).

It is clear that Congress understands the constitutional requirements needed to legally abrogate sovereign immunity. In the 101st Congress, legislation abrogated state sovereign immunity for copyright violations. *See* H.R. Rep. 102–1085. The Copyright Remedy Clarification Act eliminated the Eleventh Amendment immunity, in regard to copyright violations, and permitted states to be sued for money damages as well as other relief. *See* Copyright Remedy Clarification Act, Pub.L. No. 101–553, 104 Stat. 2749 (1990) (codified at 17 U.S.C. §§ 501(a), 511 (1994)). This law incorporated the Supreme Court's rulings in five recent cases that gave new guidance on the issue of state sovereign immunity and the constitutional requirements for abrogation. *See* H.R. 1131; *see also Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985) (holding that congressional intent to abrogate State sovereign immunity must be explicitly stated in law).

A congressional abrogation of tribal immunity cannot be implied by the abrogation of state immunity from suits involving copyright violations. *See Santa Clara Pueblo, et al. v. Martinez*, 436 U.S. 49, 58, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). Since Congress has been silent as to the abrogation of tribal sovereign immunity, the law should not be presumed as denying

the tribes or preempting the sovereign powers of the tribe. In order to conclude Congress intended to subject Indian tribes to the Copyright Act, the Court would need to infer such intent which does not unequivocally apply to tribal entities. Being cognizant of the Supreme Court's pronouncements on tribal sovereign immunity, such an inference is inappropriate. *See In re National Cattle Congress*, 247 B.R. 259, 267 (Bankr.N.D.Iowa 2000).

This Court cannot, by extension, analogize that a single exception to sovereign immunity to a comprehensive federal statute also applies to tribal sovereign immunity. Although an exclusion to sovereign immunity applicable to all states is a substantial exclusion, it can be viewed by the courts as a limited exception, and only applicable to the aforementioned governmental entities. If Congress had intended on extending the abrogation of immunity to Indian tribes, it would have done so explicitly. *See Blue Legs v. United States Bureau of Indian Affairs*, 867 F.2d 1094, 1097 (8th Cir.1989) (finding congressional intent to abrogate tribe's sovereign immunity with respect to violations of the Resource Conservation and Recovery Act), *Osage Tribal Council v. United States Dep't of Labor*, 187 F.3d 1174, 1182 (10th Cir.1999) (finding congressional intent to abrogate immunity with respect to the Safe Drinking Water Act).

Thus, this Court holds that the MBDA is sovereignly immune from suit in regard to the alleged violation of federal Copyright law and the state causes of action in regard to unfair and deceptive trade practices, breach of contract, conversion, breach of fiduciary duty, and unfair competition.

## Divestiture of Sovereign Immunity

In its response to the motion for summary judgment, Multimedia next urges this Court to balance the importance of the MBDA's sovereign immunity against the national interest in protecting copyrights. The Supreme Court has allowed a balancing test where "overriding interests of the National Government" are involved. As the Supreme Court has clearly stated, it is not the role of the federal courts to abrogate tribal sovereignty.[2] Congress has control of the inherent tribal sovereignty, and it is within its power to limit or eliminate it as it sees fit. Until Congress acts, the tribes retain their existing sovereign powers not withdrawn by the elected government or by "implication as a necessary result of their dependent status." *Wheeler*, 435 U.S. at 323, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978). Thus far, courts have only found implicit divestiture applying in areas involving the relations between a tribe and those outside a tribe.

Multimedia fails to establish any factual predicate to indicate that Congress has previously construed violations of the copyright laws as being overriding national interests in regard to sovereign immunity. Nothing allows this Court to find a waiver of tribal immunity in the absence of clear congressional abrogation or explicit waiver, and thus the Court has no power to implicitly divest the tribe of its immunity from suit in regard to violations of copyrights.

Although the alleged copyright violation may have occurred outside of the tribe's boundaries, the wing of tribal sovereign immunity still protects off-reservation commercial activities. *See Kiowa Tribe v.*

**2.** "Because the tribe retains all inherent attributes of sovereignty that have not been divested by the Federal Government, the proper inference from silence ... is that the sovereign power ... remains intact." *Iowa Mutual Insurance Company v. LaPlante*, 480 U.S. 9, 18, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987).

*Mfr. Techs., Inc.*, 523 U.S. 751, 758–60, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998). Even though the Court doubted the wisdom in continuing to support the doctrine of tribal sovereign immunity in modern society, it declined to judicially abrogate or limit the sovereign immunity. *See id.* Thus, despite the fact that the historical foundation of tribal sovereign immunity seems antiquated,[3] the Court found that Congress's continual reiteration of its approval of the doctrine demonstrates its intent to continue tribal sovereignty. *See Potawatomi*, 498 U.S. at 505, 111 S.Ct. 905.

In this case, Multimedia is claiming that the MBDA violated, not only state law, but also federal law in regard to copyright infringement. Contrary to this notion, "[n]othing on the face of the Copyright Act 'purports to subject tribes to the jurisdiction of the federal courts in civil actions' brought by private parties, and a congressional abrogation of tribal immunity cannot be implied." *Bassett*, 204 F.3d at 357 (quoting *Santa Clara Pueblo*, 436 U.S. at 59, 98 S.Ct. 1670). Even though the Copyright Act is a federal law of general application, it does not follow that Congress has abrogated tribal sovereign immunity in passing the Act. *See Bassett*, 204 F.3d at 357, *Florida Paraplegic Assn., Inc.*, 166 F.3d at 1129–33 (11th Cir.1999) (holding that a congressional act applied to Indian tribes but did not abrogate tribal immunity). Even assuming that a finding of tribal sovereign immunity would frustrate the government's interest in providing protection from copyright infringement, this interest does not rise to the level of an overriding national interest that would trigger the finding of the *Washington* Court. *Cf. Ute Distribution Corp. v. Ute*

*Indian Tribe*, 149 F.3d 1260 (10th Cir. 1998).

Previous cases hold that divestiture is proper only where the exercise of tribal sovereignty would be inconsistent with overriding interests such as when "tribes seek to engage in foreign relations, alienate their lands to non-Indians without federal consent, or prosecute non-Indians in tribal courts." *See Washington v. Confederated Tribes of Colville Indian Reservation*, 447 U.S. 134, 153, 100 S.Ct. 2069, 65 L.Ed.2d 10 (1980), *Wheeler*, 435 U.S. at 326, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978). These judicially constructed limitations have been created to balance the dichotomy between the "dependent status of Indian tribes within our nation's territorial jurisdiction ... [and the] ... tribe's independent freedom to determine their external relations." *See Wheeler*, 435 U.S. at 326, 98 S.Ct. 1079. Thus, simply violating any federal statute does not necessarily equate to interfering with an overriding national interest which would require implicit divestiture of tribal immunity.

There is no basis for divestiture of inherent tribal sovereignty in the case at bar. Furthermore, the state law causes of action of misappropriation and unfair trading also do not rise to the level of affecting a significant national interest. Because it does not implicate foreign relations, alienation of land, or the criminal prosecution of non-Indians, implicit divestiture cannot lie. In determining whether violating the copyright laws implicitly waives tribal sovereign immunity, this Court must "tread lightly in the absence of clear indications of legislative intent." *Northern States Power Co. v. Prairie Island Mdewakanton Sioux Indian Comm.*, 991 F.2d 458, 462 (8th Cir.1993).

---

3. Immunity has been traditionally thought to be necessary to promote the federal policies of cultural autonomy, economic development,

and tribal self-determination. *See* F. Cohen, Handbook on Federal Indian Law 324–328 (1982).

### Tribal Sovereign Immunity Exception

Multimedia argues, in the alternative, that should the Court hold that tribal sovereign immunity exists, an exception enunciated by the Tenth Circuit for tribal sovereign immunity should apply.[4] In their response to the motion for summary judgment, Multimedia claims that the *Dry Creek* exception should apply because the dispute: 1) involves non-Indians, 2) involves an issue outside of internal tribal affairs, and 3) cannot be adjudicated in any tribal forum. Although the instant case does involve non-Indian parties, concerns issues outside of internal tribal affairs, and involves a violation of copyright law that cannot be adjudicated in a tribal forum, *See* 28 U.S.C. § 1338, Multimedia has not claimed a specific violation of the Indian Civil Rights Act ("ICRA"), *See* 25 U.S.C. § 1302, which is a prerequisite that must be satisfied for the exception to trigger. *See Dry Creek*, 623 F.2d at 685, *Enterprise Mgmt. Consultants, Inc. v. United States*, 883 F.2d 890, 892 (10th Cir.1989).

This dispositive factor serves as an acknowledgment that *Dry Creek* must be regarded as requiring a very narrow interpretation in order to not come into conflict with subsequent Supreme Court decisions. The Tenth Circuit avoided this potential conflict by explicitly limiting *Dry Creek's* holding to its narrow facts, *See Enterprise*, 883 F.2d at 892, and thus making it applicable only where absolutely necessary. *See White v. Pueblo of San Juan*, 728 F.2d 1307, 1312 (10th Cir.1984).

The Tenth Circuit has held in subsequent decisions that the *Dry Creek* opinion provides minimal precedential value and, since then, has yet to find federal jurisdiction based on that exception. *See Ordi-*

nance *59 Ass'n v. U.S. Dept. of Interior Secretary*, 163 F.3d 1150, 1158–59 (10th Cir.1998). By evaluating the *Dry Creek* exception within the rubric of subsequent Supreme Court decisions, this Court finds that the exception is merely a slight deviation from the general rule of sovereign immunity and should be seldom utilized. *See White*, 728 F.2d at 1312. Thus, this Court holds that the *Dry Creek* exception to tribal sovereign immunity does not apply to the case at bar, and thereby declines to extend this limited exception to cases not involving ICRA claims.

### Tribal Sovereign Immunity Waiver

Tribal sovereign immunity is not a discretionary doctrine and in many ways acts as a veritable shield from suit. Having sovereign status, the tribal entity is not subject to the jurisdiction of the federal courts without its consent. In the absence of an explicit waiver by either Congress or the tribe, the Supreme Court has declined to find a waiver of immunity based on "policy concerns, perceived inequities arising from the assertion of immunity, or the unique context of the case." *Ute Distribution Corporation*, 149 F.3d 1260, 1267 (10th Cir.1998). Thus, the pivotal inquiry once sovereign immunity is judicially recognized is whether the MBDA has waived its sovereign immunity and submitted to suit in this Court.

■ The Supreme Court established the rule for determining whether a tribe's immunity from suit has been waived in *Santa Clara Pueblo*, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). The Court found that Indian tribes, being, domestic dependant nations which exercise inherent sovereign authority over their tribal members

---

4. *See Dry Creek Lodge, Inc. v. Arapahoe and Shoshone Tribes*, 623 F.2d 682, 685 (10th Cir.1980) *(cert. denied)* (holding that an exception to tribal immunity exists where the dispute involving violations of the ICRA does not concern internal tribal issues, involves non-Indian parties, and tribal remedies are unavailable).

and lands, were similar to other sovereign powers in that they have "long been recognized as possessing the [same] common-law immunity from suit." *Id.* at 58, 98 S.Ct. 1670. The Court further explained that due to their sovereign status, suits against Indian tribes are barred in absence of unequivocally expressed waivers by the tribe or express authorization by contrary legislative intent or abrogation by Congress. *See id.; Kiowa Tribe of Okla. v. Manufacturing Techs., Inc.,* 523 U.S. 751, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998). Waiving sovereign immunity does not arise through silence, implication, or innuendo. *See Merrion v. Jicarilla Apache Tribe,* 455 U.S. 130, 148 & n. 14, 102 S.Ct. 894, 71 L.Ed.2d 21 (1982), *Ute Distribution,* 149 F.3d at 1263. The courts have consistently held that the waiver of immunity must be beyond doubt, whether it applies to the government or the tribe itself. *See Florida Paraplegic, Assn., Inc.,* 166 F.3d at 1126 (11th Cir.1999).

■ The generalized merger agreement simply does not contain that unequivocal expression of tribal consent to suit necessary to effect a waiver of the MBDA's sovereign immunity. Although the plaintiff argues that the merger agreement and incorporation under state laws implies a sovereignty waiver, such is not the case. The simple act of a tribe creating a corporate merger with a non-Indian entity, much like a contract action, is not considered a waiver of sovereign immunity. *See American Indian Agric. Credit Consortium v. Standing Rock Sioux Tribe* 780 F.2d 1374, 1378–79 (8th Cir.1985). Absent an affirmative textual waiver in the terms of a contractual agreement or tribal constitution, federal courts have consistently declined to find tribal consent to federal jurisdiction. *See Seneca–Cayuga Tribe of Okla. v. State of Okla.,* 874 F.2d 709, 715

(10th Cir.1989) (holding that waivers of sovereign immunity are strictly construed).

Although the standard is high, where there is a categorical waiver of tribal sovereign immunity, the tribes will be stripped of their right to be immune from suit. *See A.K. Management Company v. San Manuel Band of Mission Indians,* 789 F.2d 785, 786 (9th Cir.1986) (tribal bingo agreement expressly waived sovereign immunity for actions brought to enforce or interpret contract), *Merrion v. Jicarilla Apache Tribe,* 617 F.2d 537, 540 (10th Cir.1980) (tribal council passed formal resolution expressly waiving sovereign immunity), *Fontenelle v. Omaha Tribe of Nebraska,* 430 F.2d 143, 147 (8th Cir.1970) ("sue or be sued" clause in tribal corporate charter constituted waiver of sovereign immunity as to tribal corporation); *but see Ransom v. St. Regis Mohawk Educ. and Comm. Fund, Inc.,* 86 N.Y.2d 553, 635 N.Y.S.2d 116, 658 N.E.2d 989 (1995) (holding that "sue and be sued" language means only that entity has status and capacity to enter state courts and does not signify a waiver of sovereign immunity against suit).

Multimedia argues that the waiver of sovereign immunity is clear from the consent to service of process in the certificate of merger. This language states in pertinent part that:

> The MBDA "agrees that it may be served with process in this state in any proceeding for enforcement of any obligation of any constituent corporation of this state, as well as for enforcement of any obligation of the surviving or resulting corporation arising from the merger ..." *See* Multimedia's Exhibit F.

The consent to service of process is not analogous to the consent to waive tribal sovereign immunity. *See Snow v. Quinault Indian Nation,* 709 F.2d 1319, 1322 (9th Cir.1983). At the most, the consent to service waives only personal jurisdictional

defenses, but does not deprive the tribe of its inherent sovereign immunity. *See Cohen v. Little Six, Inc.,* 543 N.W.2d 376 (1996), *Gavle v. Little Six, Inc.,* 534 N.W.2d 280 (1995); *see also Mascheroni v. Board of Regents,* 28 F.3d 1554, 1560 (10th Cir.1994) (holding that the appearance of a state entity is insufficient to waive Eleventh Amendment immunity).

Multimedia argues that the purpose of finding that consent to service of process waives immunity is to ensure that at least one judicial forum is available. Such an argument is untenable, because access to tribal courts have in no way been eliminated and still offer a viable alternative to suing in federal district court for appropriate causes of action. Thus, the Court cannot equate the agreement to consent to service of process as a waiver of tribal sovereign immunity.

The merger contract is devoid of any language that clearly expresses the Tribe's intent to authorize causes of action in federal court. The language contains no references to an express waiver or limitation of tribal immunity. Multimedia argues that the voluntary merging of MBDA (a corporation formed under the laws of the Miami tribe) with Worldlink made MBDA amenable to the Oklahoma General Corporation Act, Okla. Stat. tit. 18, § 101 et. seq. (1991), (hereafter "OGCA"). Nonetheless, incorporating under the laws of a state does not amount to an express waiver of trial sovereign immunity. *See Cohen,* 543 N.W.2d at 376, *Haile v. Saunooke,* 246 F.2d 293, 297–98 (4th Cir.1957). Although in the Certificate of Merger both merging entities agreed to enter into the agreement in accordance with the requirements of the OGCA, the OGCA's general power provisions are not self-executing. Thus the agreement does not equate to the tribe's express relinquishment of sovereign status and immunity.

As has been discussed previously, the only entities that can determine the extent to which the immunities and protection are afforded to tribes are Congress and the applicable tribes, themselves. The state legislatures have no such right. Thus, it would be inconsistent with previous Supreme Court law for this Court to find an implied waiver of tribal immunity based on the purposes of Oklahoma corporate law rather than an unequivocal and explicit expression of tribal intent to relinquish their rights. *See Santa Clara Pueblo,* 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978).

### Injunctive and Declaratory Relief

The Court notes that discussions concerning the applicability of injunctive and declaratory relief are contained in the response and reply briefs to the motion for summary judgment. Though case law supports certain forms of declaratory and injunctive relief regarding Indian tribes, that issue is not squarely before this Court. Thus, the Court will entertain any motion for declaratory and injunctive relief as a matter of law only when properly presented.

### Necessary and Indispensable Party

■ The doctrine of tribal sovereign immunity bars the nonconsensual joinder of a tribe in any type of action regardless of whether the relief sought is equitable or legal in nature. *See Potawatomi,* 498 U.S. 505, 515, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991); *United Keetoowah Band of Cherokee Indians v. Mankiller,* 2 F.3d 1161, 1161, 1993 WL 307937 (10th Cir.1993). Although it is not uncommon for a court to dismiss an action because a tribe is necessary and indispensable in a case where a plaintiff attempted to litigate matters affecting a tribe without the explicit consent of that Indian nation, *See e.g. Enterprise,* 883 F.2d 890; *Tewa Tesuque v. Morton,* 498 F.2d 240 (10th Cir.1974), in this case,

such a result would be improper. Although tribal sovereign immunity applies, if the MBDA is not necessary and indispensable, modern jurisprudence would not require the dismissal of suit. Determining whether the MBDA is a necessary and indispensable party involves a two-step inquiry. *See* Fed.R.Civ.P. 19. First, the Court must decide whether the absent party should be joined as a necessary party. *See* Fed.R.Civ.P. 19(a) If the party in question is considered by the Court to be necessary to the litigation but cannot be joined, then and only then does the Court determine whether a party is indispensable. *See* Fed.R.Civ.P. 19(b).

██ Actions for copyright and trademark infringement generally sound in tort, and thus a plaintiff can sue less than all the alleged infringers in such an action. *See Costello Publishing Co. v. Rotelle*, 670 F.2d 1035, 1043 (D.C.Cir.1981) (plaintiff can sue infringers at his discretion due to copyright infringer's joint and several liability), *see also Leo Feist, Inc. v. Young*, 138 F.2d 972, 975 (7th Cir.1943), *Video Views, Inc. v. Studio 21, Ltd.*, 925 F.2d 1010, 1014 (7th Cir.1991) (dicta) (copyright violations are analogous to other tort actions), 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, Civil.2d § 1614, at 225 (2d ed.1986), 3 Nimmer on Copyright § 12.03 (12–32 n. 18) (1980 ed.), 3A Moore's Federal Practice ¶ 19.14(2–4) (2d Ed.1974).

 It is a well-settled rule that a joint tortfeasor is not a necessary party under Rule 19(a) to an action against another party with similar liability. *See Temple v. Synthes Corp.*, 498 U.S. 5, 7, 111 S.Ct. 315, 112 L.Ed.2d 263 (1990). A tortfeasor considered to have "joint-and-several" liability is simply a permissive party to an action against another with like liability. *See* Rule 19(b) Advisory Notes, *see also* 3 Moore's Federal Practice 2153 (2d ed.1963). Because a co-tortfeasor is simply allowable but not necessary for a copyright violation, they are by nature also not indispensable parties. *See Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors Pty. Ltd.*, 647 F.2d 200, 207 (D.C.Cir.1981) (those left out of copyright violation suits are not indispensable parties because any member of the chain can be sued at the plaintiff's discretion). In this case, no inquiry under Rule 19(b) is necessary because the threshold requirements of Rule 19(a) have not been satisfied. Thus, the Court holds that the inability to join the tribal economic enterprise in this case does not affect the legitimacy of the instant case. The case can be completely resolved and relief can be granted without adjudicating the rights of the MBDA.

In regard to the other claims for relief, Multimedia has only made allegations against the MBDA in reference to unfair and deceptive trade practices, trade secret misappropriation,[5] and unfair competition.[6] The claim of misappropriation of trade secrets and confidential information essentially sound in tort. *See Eaton Corp. v. Appliance Valves Co.*, 634 F.Supp. 974, 982 (N.D.Ind.1984), *Auto Channel Inc. v. Speedvision Network, LLC*, 995 F.Supp. 761 (W.D.Ky.1997), *Aktiebolaget Bofors v. United States*, 194 F.2d 145 (D.C.Cir.1951). Likewise, the additional claim for relief concerning unfair competition are considered tortuous actions regardless of wheth-

---

**5.** The claim of misappropriation is a branch of the tort of unfair competition. *See Roy Export Co. Establishment v. Columbia Broadcasting System, Inc.*, 672 F.2d 1095, 1104–06 (2nd Cir.1982).

**6.** The claims for relief of conversion, breach of contract, and breach of fiduciary duty are made only as to defendants Harris and Johnson.

er the allegedly misused property was a trade secret. *See R. Ready Productions, Inc. v. Cantrell,* 85 F.Supp.2d 672, 693 (S.D.Texas 2000), *see also Zaidan v. Borg–Warner Corporation,* 341 F.2d 391 (3d Cir. 1965), *Federal Express Corporation v. United States Postal Service,* 959 F.Supp. 832, 833 (W.D.Tenn.1997). Even though a cause of action for deceptive trade practices is not based entirely in either tort or contract law, because it is designed to supplement both, the facts of this case premise the claim for deceptive trade practices on tortuous activity by MBDA, rather than a contractual claim. *See Marshall v. Miller,* 302 N.C. 539, 276 S.E.2d 397, 400 (1981).

Thus, because the claims of relief sound in tort, the co-defendants are considered joint tortfeasors, as they were with the claim for copyright infringement. Where this situation exists, Multimedia has the privilege of selecting its defendant without regard to a necessary and indispensable party. Although the MBDA can have no greater rights or legal interests than those possessed by its predecessor in interest,[7] any interest that the MBDA allegedly possesses cannot be jeopardized by their absence as a party in this matter.

It is established law that the MBDA bears the burden of demonstrating that the tribal entity has an interest relating to Multimedia's claim and that the MBDA's ability to protect that interest will be impaired or impeded by the disposition of the suit in its absence. *See Rishell v. Jane Phillips Episcopal Mem'l Med. Ctr.,* 94 F.3d 1407, 1411 (10th Cir.1996). Because the nature of the suit involves joint tortfeasors with joint and several liability, such a burden cannot be met. Thus the MBDA has failed to prove itself to be a necessary or indispensable party to these proceedings.

### Conclusion

■ Although the MBDA may be shielded from suit through tribal sovereign immunity, the Court will not extend this immunity to protect non-tribal entities. Multimedia's claims for relief do not concern the actions of Harris and Johnson as members or officers of the MBDA, but rather as non-Indians prior to their association with the MBDA. Even though Johnson and Harris, currently serve as officers of the MBDA, tribal sovereign immunity does not attach to them and thus they are susceptible to Multimedia's claims. *See Puyallup,* 433 U.S. at 171–77, 97 S.Ct. 2616, *see also Santa Clara Pueblo,* 436 U.S. at 58–59, 98 S.Ct. 1670.

Harris, Johnson, and Worldlink argue that because the sovereignly immune tribal enterprise is allegedly necessary and indispensable, any other defendants should be shielded from suit. It is the holding of this Court that non-Indian parties cannot shield themselves from pre-merger liability by merely associating thereafter with a tribe or tribal entity. In this case, the MBDA is not only unnecessary to the claims for relief, but neither is it indispensable. Thus, defendants' attempt to manipulate a doctrine designed to preserve tribal self-governance and independence into one that can be used as a legalistic loophole to assist non-Indians in the avoidance of civil liability cannot stand.

In sum, defendants have failed to show undisputed factual averments and legal authority which warrant a grant of summary judgment in whole. The Court finds summary judgment in favor of defendants appropriate as to their claim that tribal sov-

---

**7.** The Court notes that the predecessor in interest in the current case is the merging entity, Worldlink.

ereign immunity is applicable to the MBDA, but only as to the MBDA. However, the Court finds, as a matter of law, that the MBDA is not a necessary or indispensable party to these proceedings pursuant to Rule 19, and thus this action will proceed against all other defendants without the MBDA as a party.

Accordingly, defendants' motion for summary judgment, pursuant to Rule 19 and 56 of the Federal Rules of Civil Procedure, is hereby DENIED in part and GRANTED in part.