355 F.2d 364
 PRAIRIE BAND OF the POTTAWATOMIE TRIBE OF INDIANS, Mrs.
Minnie Evans, Whose Indian Name is Minnie Weshkeenoo, John
P. Wahwassuck, Alfred Curtis Pequana, James P. Wahbnosah and
William Hale, Appellants,
v.
Stewart L. UDALL, Secretary of Interior, Philleo Nash,
Commissioner of IndianAffairs, and Buford
Morrison, Area Field Representative, Appellees.
 No. 8129.
 United States Court of Appeals Tenth Circuit.
 Jan. 24, 1966.
 
 Sam A. Crow, Topeka, Kan. (J. A. Dickinson, Ralph Skoog and Bill G. Honeyman, Topeka, Kan., on the brief), for appellants.
 Roger P. Marquis, Attorney, Department of Justice (Edwin L. Weisl, Jr., Asst. Atty. Gen., Newell A. George, U.S. Atty., and Elmer Hoge, Asst. U.S. Atty., on the brief), for appellees.
 Before PICKETT, LEWIS and HILL, Circuit Judges.
 HILL, Circuit Judge.
 
 
 1
 This action represents a second effort of the appellants to interject the Federal courts into a tribal dispute over what Indians are eligible to receive part of a $3,209,217.00 award payable by Congress to the Prairie Band of the Pottawatomie Tribe of Indians. The money awarded was based on an earlier Indian Claims Commission judgment granting the tribe in question further compensation for land taken by the government in the nineteenth century. In addition to a declaration of their rights, the appellants seek injunctive relief against the appellees to prevent them from further determining who is eligible to receive the fund and from distributing any money thereto.
 
 
 2
 Appellants' first attempt to invoke Federal jurisdiction into this issue met with complete failure when this court in Prairie Band of Pottawatomie Tribe of Indians v. Puckkee, 10 Cir., 321 F.2d 767, held that there was no jurisdiction of this type of action either under 28 U.S.C. 1353 or 28 U.S.C. 1331 and furthermore that in essence the action was a private civil dispute between Indians of the same Tribe and Band concerning the distribution of proceeds of a sum of money. As Chief Judge Murrah said in that opinion, at page 770, 'It is an intratribal controversy, over which Federal court jurisdiction has been traditionally denied.' However, during the pendency of the appeal in that case, Congress enacted 28 U.S.C. 1361, which the appellants then raised to support jurisdiction on appeal for the first time. The court there refused to consider that statute but indicated it could be raised anew in a trial court. The appellants did just that and raised 28 U.S.C. 1361 in the court below which held that it did not have jurisdiction of the subject matter nor to grant the relief in question and that the appellants did not have standing to raise the issue and further that the Tribe and the United States are indispensable parties and cannot be joined without the consent of Congress. From that judgment, the appellants have perfected their appeal here once again.
 
 
 3
 The pertinent facts to this dispute are sufficiently set forth in the previous opinion, Prairie Band of Pottawatomie Tribe of Indians v. Puckkee, supra. Suffice it to say here that the Prairie Band of the Pottawatomie Tribe is authorized by Congress to receive a sizable sum of money based upon an Indian Claims Commission Award. That award stated, '* * * the petitioner Potawatomi Nation, as created by the treaty of June 5, 17, 1846, and as it then existed, is entitled to an award for the benefit of all descendants of said Nation as it was constituted and recognized by the United States in said treaty, * * *.' Then in appropriating the money to satisfy the award Congress said the fund, '* * * may be advanced or expended for any purpose that is authorized by the respective tribal governing bodies and approved by the Secretary of the Interior.' See Act of September 6, 1961, 75 Stat. 474.
 
 
 4
 By appropriate resolutions, the General Council of the tribe authorized the business committee to establish the roll for the distribution of the appropriation. Thereafter in accordance with the above, a tribal membership roll was prepared indicating it 'shall consist of the original allottees of the Prairie Band of Potawatomie Indians of Kansas living as of midnight December 1, 1960, and the descendants by blood of all original allottees of the Prairie Band of Potawatomie Indians living as of midnight December 1, 1960 * * *.' The resolution also provided that any person not placed on the membership roll may appeal the tribe's decision to the Secretary of Interior. Furthermore, any person claiming membership rights in the tribe may file a protest concerning the inclusion of any other person on the roll with the Secretary of Interior which protest will be promptly determined by the Secretary.
 
 
 5
 Under the provisions of 25 U.S.C. 163,[1] the Secretary of Interior has approved this resolution concerning creation of a tribal membership roll. From the pleadings it appears that the appellants have filed a written protest against the inclusion on the proposed roll of approximately 2,101 names. So far as we are aware, the roll of individuals who are to receive the benefits of the award has not yet been completed. In fact the Secretary stated in the answer to the written interrogatories that the final determination on eligibility has been suspended pending a final decision here. Preparatory work has progressed through the protest filing stage where it remains at this time.
 
 
 6
 Appellants' objection to the proposed plan of distribution is on the ground that the allottees mentioned and their descendants are not part of the identifiable group of Indians who constituted the Pottawatomie Nation and their descendants as it was recognized in 1846. Apparently they wish to restrict the award only to those descendants of the Tribe as it existed at the time of the treaty of 1846. According to appellants, if the procedure now sanctioned by the Secretary of Interior is followed, many people will benefit from the distribution who are not entitled to do so which will cause appellants irreparable damage.
 
 
 7
 Appellants are not representing the tribe to which they belong. They only appear individually as members of the tribe and as the Tribal Councilors and Tribal Claims Committee. Furthermore, they pursue their cause here notwithstanding an earlier opinion of this court which stated unequivocally that there is no federal jurisdiction to settle intratribal controversies which is exactly what this is. Also, insofar as the appellants' contention here involves a construction of the Indian Claims Commission judgment, that opinion declined to participate in such a decision, Prairie Band of Pottawatomie Tribe of Indians v. Puckkee, supra. Apparently their sole hope of jurisdiction is 28 U.S.C. 1361, although their prayer for relief hardly bears this out since 1361 is a mandamus statute and the appellants seek injunctive relief and a declaratory determination of their rights.
 
 
 8
 28 U.S.C. 1361 and 1391(e) were enacted in 1962 and relate to mandamus against officers and employees of the federal government. Prior to this act, it was necessary to pursue such a cause of action only in the District of Columbia. Now, however, such action may be brought throughout the United States in any District Court.[2] It is clear that the Act did not enlarge the scope of mandamus relief.[3]
 
 
 9
 Historically, mandamus is an extraordinary remedial process awarded only in the exercise of sound judicial discretion. Before such a writ may issue, it must appear that the claim is clear and certain and the duty of the officer involved must be ministerial, plainly defined, and peremptory. Huddleston v. Dwyer, 10 Cir., 145 F.2d 311. The duty sought to be exercised must be a positive command and so plainly prescribed as to be free from doubt. Wilbur v. United States ex rel. Kadrie, 281 U.S. 206, 50 S.Ct. 320, 74 L.Ed. 809.
 
 
 10
 We have searched the record and the applicable law in an effort to ascertain a specific duty owed by the appellees to the appellants but have found none. The original Indian Claims Commission Award merely said the fund was for the benefit of all descendants of the Nation as it existed in the Treaty of 1846. In appropriating the money to satisfy this award, the Congress stated the money could be used for any purpose authorized by the tribal governing body and approved by the Secretary. Certainly it cannot be seriously argued that giving the Secretary authority to approve tribal action is a specific ministerial duty owed individually to the tribal members. Far from being ministerial, mere approval authority with nothing more appears highly discretionary.
 
 
 11
 The only statutory provision applicable is 25 U.S.C. 163, supra, Note 1. But this certainly does not place a ministerial duty upon the Secretary which he owes to the individual members of the tribe. In fact it specifically recites that the Secretary may in his discretion authorize a membership roll to be made of a tribe and this he has authorized to be done. The second clause of the section then grants the Secretary approval authority on the roll after it has been made which the facts show has not as yet been completed due in large part to the present action. Once again, we fail to see how approval authority can be classified as a pure ministerial function. Based upon this, we must conclude that 28 U.S.C. 1361 does not provide the appellants with jurisdiction of this case.
 
 
 12
 Though unique because of its relationship to an Indian Tribe, the suit is merely a private one concerning tribal membership and the courts have consistently refused to interfere in such a matter. Martinez v. Southern Ute Tribe of Southern Ute Res., 10 Cir., 249 F.2d 915. Appellants must utilize the procedure adopted by the tribe and approved by the Secretary for protesting the proposed membership roll.
 
 
 13
 Because of our disposition, we need not decide whether or not the Tribe and the United States are indispensable parties.
 
 
 14
 Affirmed.
 
 
 
 [1]
 25 U.S.C. 163 provides:
 'Roll of membership of Indian tribes
 The Secretary of the Interior is authorized, wherever in his discretion such action would be for the best interest of the Indians, to cause a final roll to be made of the membership of any Indian tribe; such rolls shall contain the ages and quantum of Indian blood, and when approved by the said Secretary are declared to constitute the legal membership of the respective tribes for the purpose of segregating the tribal funds as provided in section 162 of this title, and shall be conclusive both as to ages and quantum of Indian blood: Provided, That the foregoing shall not apply to the Five Civilized Tribes or to the Osage Tribe of Indians, or to the Chippewa Indians of Minnesota, or the Menominee Indians of Wisconsin. June 30, 1919, c. 4, 1, 41 Stat. 9.'
 
 
 [2]
 See Sen.Rept. # 1992, 87th Cong., 2nd Sess. (1962)
 
 
 [3]
 Smith v. United States, 10 Cir., 333 F.2d 70