**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 25 2003**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

### UNITED STATES COURT OF APPEALS

### TENT CIRCUIT

---

KAW NATION, a federally recognized
Indian Tribe,

     Plaintiff - Appellant,

v.

MARYLN SPRINGER; MARCIE
MEYER; JULIA LOGSDON; and
WANDA STONE,

     Defendants - Appellees.

No. 02-6169

---

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. CIV-02-0332-R)**

---

**Submitted on the briefs:**[*]

Michael Minnis and David McCullough, Michael Minnis & Associates, P.C.,
Oklahoma City, Oklahoma for Plaintiff-Appellant.

Dena L. Silliman, Attorney at Law, Denver, Colorado for Defendants-Appellees.

---

Before **EBEL**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **MURPHY**,
Circuit Judge.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case
therefore is ordered submitted without oral argument.

**EBEL**, Circuit Judge.

Plaintiff-Appellant, Kaw Nation, appeals the dismissal of its complaint from federal district court for lack of subject matter jurisdiction. The tribe attempted to bring suit in district court against its former officials and other individuals under a federal criminal statute, 18 U.S.C. § 1163, but failed to establish that a private cause of action existed under the statute. On appeal, the tribe reasserts its argument for a private civil cause of action in the criminal statute, and proffers for the first time an alternate basis of jurisdiction in the Native American Housing Assistance and Self-Determination Act ("NAHASDA"), which appropriates money to Indian tribes for affordable housing. NAHASDA, codified at 25 U.S.C. § 4101 et seq. The former officials of the tribe defending suit assert that they should be entitled to qualified immunity because they acted on behalf of the tribe over the course of events at issue.

We AFFIRM the district court's dismissal of the tribe's suit for lack of subject matter jurisdiction, and do not reach the remaining issues raised. We do not consider whether the NAHASDA might provide an alternate basis of jurisdiction because the tribe failed to raise the argument below. See Walker v.

Mather, 959 F.2d 894, 896 (10th Cir. 1992) (holding that this court will not consider an issue not properly raised below). We do not consider the merits of the former tribal officials' defense of qualified immunity because we affirm the district court's dismissal of the tribe's suit on the ground that § 1163 does not provide for a private cause of action, and the defense of qualified immunity is therefore moot. See Griffin v. Davies, 929 F.2d 550, 554 (10th Cir. 1991) (holding that this court will not "undertake to decide issues that do not affect the outcome of a dispute").

## BACKGROUND

Because we dismiss the tribe's suit for lack of subject matter jurisdiction, we describe the facts of its claim only briefly.

Under the Native American Housing Assistance and Self-Determination Act ("NAHASDA"), 25 U.S.C. § 4101 et seq., Congress appropriated monies to provide affordable housing in Indian areas for low-income Indian families. Block grants under the Act were to be controlled by the Secretary of Housing and Urban Development (HUD), see, e.g., 25 U.S.C. § 4111(a), and paid directly to a recipient for the tribe, see, e.g., id.; 24 C.F.R. § 1000.56. During the events relevant to this case, the Kaw Nation's tribally designated housing entity (TDHE)

eligible to disburse funds under the Act was the Housing Authority of the Kaw Tribe of Indians of Oklahoma (the Housing Authority).

Defendant Maryln Springer was Executive Director of the Housing Authority; Defendants Marcie Meyer and Julia Logsdon were recipients of housing funds through the Housing Authority. The former Chairman of the Kaw Nation tribe, defendant Wanda Stone, was also allegedly implicated in the misuse of NAHASDA federal housing monies.

In its complaint, the tribe alleged that these individuals violated clear rules regarding the use of the federal housing monies. Under NAHASDA, HUD established maximum spending limits for dwelling construction and equipment costs for each Indian area. See 24 C.F.R. § 1000.156 (requiring moderate design for affordable housing, considering factors such as size, cost and amenities). For the Kaw housing area, the HUD-established maximum amount of federal money that could be expended on a three-bedroom house for an eligible low-income Indian family was $74,908.[1] According to the tribe's complaint, Executive Director Springer authorized the expenditure of $108,000 in federal monies to build a three-bedroom house for her daughter Marcie Meyer. Meyer allegedly knowingly received and retained the benefit of these misapplied federal housing

---

[1] The tribe does not cite the government source from which it draws these figures. Defendants, however, do not contest the accuracy of the numbers.

funds. The complaint also alleged that Springer authorized the expenditure of $121,000 in federal funds to build a three-bedroom house for her niece Julia Logsdon. Similarly, Logsdon allegedly knowingly received and retained the benefit of these misapplied federal housing funds.

The tribe's complaint additionally alleged that Springer violated HUD maximums on the amount of money that could be used to build a third house, but the complaint did not name the recipients of those monies as defendants. The HUD cap for a four-bedroom house was $85,846. The complaint alleged that Springer authorized $131,000 to build a four-bedroom house for Chris and Debbie Vap.

The tribe's complaint further alleged that Springer misused federal housing funds in other ways. NAHASDA funds were only to be expended on affordable housing or on the reasonable administrative and planning expenses of the tribe related to affordable housing projects. 25 U.S.C. § 4111 (g)-(h). On or about February 15, 2002, Springer allegedly used a Housing Authority credit card to purchase airline tickets costing $937 for herself and her daughter Brandy Springer to attend a wedding in Seattle, Washington that was unrelated to official business. The tribe asserted that additional investigation of Springer's misuse of small amounts would uncover improper expenditures totaling more than $10,000.

Finally, the tribe alleged that Springer and Chairman Stone misused $10,000 in federal monies to hire Jess Green, an attorney and agent for Ram Jack of Oklahoma, Inc., a vendor to the Housing Authority, for the purpose of "suing the Kaw Nation to keep Defendant Springer employed and to harass . . . Defendant Stone's political opposition." Chairman Stone, however, characterized her action in signing this check for Springer's expenditure as entirely within her official capacity as an alternate signer of checks for the Housing Authority.

Procedural History

The district court below dismissed the tribe's suit for lack of subject matter jurisdiction. In its complaint, the tribe attempted to invoke federal jurisdiction under 28 U.S.C. §§ 1331 and 1362. Section 1331 grants federal courts original jurisdiction over "civil actions arising under the Constitution, laws, or treaties of the United States." Section 1362 grants federal district courts jurisdiction over "all civil actions, brought by any Indian tribe . . ., wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States." Both statutes are thus restricted to conveying jurisdiction over civil actions.

The tribe, however, attempted to bring its civil claims pursuant to a criminal statute, 18 U.S.C. § 1163. Under 18 U.S.C. § 1163, it is a violation of federal law to "embezzle[], steal[], knowingly convert[] to his use or the use of

another, willfully misappl[y], or willfully permit[] to be misapplied, any of the moneys, funds, credits, goods, assets, or other property belonging to any Indian tribal organization or intrusted to the custody or care of any officer, employee, or agent of an Indian tribal organization." The penalty under 18 U.S.C. § 1163 is a fine, imprisonment for a term not more than five years, or both.[2] Id. In reaching its decision, the district court found no private civil right of action in this criminal statute.

The district court refused to follow the case of Cheyenne-Arapahoe Tribes of Oklahoma v. Beard, 554 F. Supp. 1, 4 (W.D. Okla. 1980), in which the Western District of Oklahoma had held that 18 U.S.C. § 1163 could confer a private right of action for damages upon an Indian tribe. Cheyenne-Arapahoe had been decided on the basis of the Supreme Court's 1975 decision in Cort v. Ash, 422 U.S. 66, 79-80 (1975). But Cort's original multiple-factor test for the presence of a private right of action has since been consolidated into a single inquiry: whether Congress, expressly or by implication, intended to create a private right of action for civil parties in the statute. Schmeling v. Nordam, 97 F.3d 1336, 1343-44 (10th Cir. 1996); Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 15-16 (1979); see also Sonnenfeld v. City and County of Denver, 100 F.3d 744,

_____

[2] If the value of the property misused was less than $1,000, the penalty is a fine, imprisonment for not more than one year, or both. 18 U.S.C. § 1163.

- 7 -

747 (10th Cir. 1996), cert. denied, 520 U.S. 1228 (1997) ("Cort 's four factors have been effectively condensed into one--whether Congress, expressly or by implication, intended to create a private cause of action.") (citations omitted).

Applying this modern test, the district court here found that, although the language and legislative history of § 1163 showed that Congress intended generally to protect Indian tribal organizations through its enactment, the statute did not contain a private civil right of action because there is no indication that Congress intended to provide the tribes with such an enforcement mechanism. For this analysis, the district court relied on the decision in Chilkat Indian Village v. Johnson, 643 F. Supp. 535 (D. Alaska 1986), aff'd, 870 F.2d 1469 (9th Cir. 1989). As the district court here observed, Chilkat explained that "[n]othing in the language or structure of § 1163 suggests that Congress intended to create anything more than criminal liability." 643 F. Supp. at 536. The statute's legislative history was instead "quite brief, and states that its purpose was 'to provide a [federal] criminal penalty' for theft or conversion of Indian property, owing to difficulties that had been encountered in bringing criminal prosecutions for such offenses in tribal courts." (Slip op. at 4 (citing Chilkat, 643 F. Supp. at 536).)

> Accordingly, the district court concluded that it had no subject matter jurisdiction over the suit brought by the Kaw Nation, and it dismissed the case.

- 8 -

(Id. at 4-5.)  We affirm the district's court's decision.

## DISCUSSION

We review questions of law de novo.  Elder v. Holloway, 510 U.S. 510, 516 (1994); Dang v. UNUM Life Ins. Co. of Am., 175 F.3d 1186, 1189 (10th Cir. 1999).

We agree that no private right of action for civil parties exists under 18 U.S.C. § 1163.  In reaching this conclusion, we find the Ninth Circuit's reasoning in rejecting a similar attempt to bring a civil claim under 18 U.S.C. § 1163 to be persuasive.  In Chilkat Indian Village v. Johnson, 870 F.2d 1469 (9th Cir. 1989), the defendants removed from an Indian village carved wooden posts and a wooden partition described as "the finest example of Native art, either Tlingit or Tsimshian, in Alaska."  Id. at 1471 (citation omitted).  The State of Alaska began a criminal investigation, located the artifacts in a warehouse in Seattle, and took custody of them.  Id.  The village filed suit, seeking return of the artifacts as well as monetary damages for their removal under § 1163.  Id.  The Alaskan federal district court found that the tribe had no private right of action under the criminal statute and dismissed for lack of federal subject matter jurisdiction.  Id.

The Ninth Circuit affirmed, agreeing that § 1163 provided no private right of action.  Id. at 1472.  Quoting the Supreme Court, the Ninth Circuit emphasized

- 9 -

that the "central inquiry remain[ed] whether Congress intended to create, either expressly or by implication, a private cause of action." Id. (quoting Touche Ross & Co. v. Redington, 442 U.S. 560, 575 (1979)). Turning first to the statute's language and structure, the appellate court found it devoid of inference that Congress intended to create a private right of action. Id. ("Nothing in the language or statutory structure of § 1163 gives rise to an inference that Congress intended to create a private right of action."). An analysis of the brief history of the statute also revealed no suggestion that Congress intended a private right of action.[3] The decision examined a letter from an Assistant Secretary of the

---

[3] The full text of the appellate court's analysis of § 1163's legislative history is as follows:

> The legislative history suggests that Congress was wholly concerned with criminal, rather than civil, objectives. The Senate Report accompanying section 1163 consists primarily of a letter from Assistant Secretary of the Interior Andaahl, who described problems attending the expansion of fiduciary responsibilities of tribal officials:

> "[I]n most instances the creation of fiduciary positions has not been paralleled by corresponding safeguards in the law and order codes under which the tribes operate. Even in those instances where criminal sanctions are provided in the tribal codes, the tribal members have been extremely reluctant to bring actions in the tribal courts against apparently faithless tribal officials. . . . In these circumstances, it is important that adequtae [sic] penal safeguards be established to protect the tribal members from actions of dishonest or corrupt tribal officials and other types of peculation."

(continued...)

- 10 -

Interior, which described the need for the law solely in terms of providing "penal safeguards," as opposed to a civil remedy, and noted that § 1163 was modeled after other criminal statutes (18 U.S.C. §§ 641, 656, and 660), none of which have been found to give rise to private civil rights of action. Id. The Ninth Circuit thus concluded that, "[i]n the absence . . . of any basis for inferring an intent on the part of Congress to create a private remedy, we are not free to fashion one." Id. (citing Thompson v. Thompson, 484 U.S. 174, 108 S. Ct. 513, 520; Touche Ross, 442 U.S. at 576).

---

[3](...continued)
Sen. Rep. No. 2723 (1956), reprinted at 1956 U.S. Code Cong. & Admin. News 3841, 3842. In light of these difficulties in "obtaining the prosecution of persons who misused tribal property [,]" the Committee recommended passage. Id. The clear congressional emphasis seems to have been upon replacing a defective tribal criminal penalty with an effective federal one; a civil remedy cannot be fit easily into the picture.

Finally, the same legislative history recites that section 1163 is modeled after 18 U.S.C. §§ 641, 656 and 660. Id. As the district court noted, Chilkat, 643 F. Supp. at 536-37, none of those sections has been held to give rise to a private right of action. In the absence, then, of any basis for inferring an intent on the part of Congress to create a private remedy, we are not free to fashion one. See Thompson v. Thompson, 484 U.S. 174, 108 S. Ct. 513 at 520 (1988); Touche Ross, 442 U.S. at 576, 99 S. Ct. at 2489. We therefore affirm the district court's dismissal of the Village's section 1163 claim.

Chilkat, 870 F.2d at 1472.

On appeal, the tribe, nevertheless, makes three arguments that it should have a private right of action under § 1163 despite the Ninth Circuit's analysis. None of the tribe's arguments have merit.

First, the tribe contends that Chilkat should be distinguished on its facts because that decision concerned a suit against individuals who had removed artifacts from a tribe's control, rather than officials who had misused funds entrusted to a tribe. We reject this argument because this distinction does not affect the legal reasoning of Chilkat.

Second, the tribe argues that the Ninth Circuit in Chilkat gave insufficient weight to language in the Supreme Court case of Thompson v. Thompson, 484 U.S. 174 (1988), which acknowledged that a private right of action could be inferred from congressional language, as well as explicitly stated. The sentence the tribe refers to in Thompson was "Our focus on congressional intent does not mean that we require evidence that Members of Congress, in enacting the statute, actually had in mind the creation of a private right of action." 484 U.S. at 179. The rest of the paragraph in Thompson, however, puts the sentence in context. The Thompson Court concluded that "[t]he intent of Congress remains the ultimate issue, . . . and 'unless this congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist.'" Thompson,

484 U.S. at 179 (quoting <u>Northwest Airlines, Inc. v. Transport Workers</u>, 451 U.S. 77, 94 (1981)). The <u>Chilkat</u> court then correctly focused on whether the language or history of § 1163 explicitly or implicitly demonstrated that Congress intended to create a private right of action. It properly concluded that they did not.

Third, the tribe makes a policy argument that it should not be at the mercy of the U.S. Attorney's Office to prosecute cases of criminal wrongdoing, but cites no new law or legislative history to suggest that Congress has recognized, or sought to remedy, reliance on the services of the U.S. Attorney's Office as a problem in the implementation of § 1163. Whatever the merits may be of creating a mechanism for tribes to enforce laws against the misuse of federal funds, § 1163 does not provide such a federal mechanism and we are not free to rewrite the statute to include one.[4]

Accordingly, we find the Ninth Circuit's analysis of the question in <u>Chilkat</u> to be persuasive, and we AFFIRM the district court's dismissal of the Kaw Nation's case for lack of subject matter jurisdiction.

---

[4] Presumably the tribe may have state or tribal remedies available against these defendants.

**CONCLUSION**

For the reasons stated above, we find no private civil cause of action in 18 U.S.C. § 1163. We AFFIRM the dismissal of the Kaw Nation's suit under the statute for lack of subject matter jurisdiction.