**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 16 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

KAW NATION, ex rel. Clyde
McCauley, Martha Spotted Bear, Clark
Pepper and Jesse Mehojah; and
CLYDE McCAULEY; JESSE
MEHOJAH; CLARK PEPPER; and
MARTHA SPOTTED BEAR,
individually,

        Plaintiffs - Appellants,

    v.

PHIL LUJAN; CHARLES BRADY
MORRIS; GUY MUNROE; and
CHARLES HENRY TRIPP,

        Defendants - Appellees.

No. 03-6213

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. NO. CIV-03-39-M)**

Submitted on the briefs[*]:

Michael Minnis and David McCullough of Michael Minnis & Associates, P.C.,
Oklahoma City, Oklahoma, for Plaintiffs - Appellants.

---

[*]After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument.

John W. Hunt, Broken Arrow, Oklahoma, for Defendant - Appellee Phil Lujan.

Michael Salem of Salem Law Offices, Norman, Oklahoma, for Defendant - Appellee Guy Munroe.

_____

Before **HENRY** , **BRISCOE** , and **HARTZ** , Circuit Judges.

_____

**HARTZ** , Circuit Judge.

_____

Plaintiffs appeal the dismissal of their suit for lack of subject matter jurisdiction. They contend that the district court erred in characterizing their claims as involving a purely intratribal dispute and assert that the district court had jurisdiction to determine whether certain persons were properly appointed to the Kaw Nation District Court (KNDC) and the Kaw Nation Supreme Court. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.    BACKGROUND

*A. Tribal Proceedings*

This case arises from a dispute among officials of the Kaw Nation of Oklahoma (the Tribe), a federally recognized Indian tribe. The Tribe adopted its present constitution in 1990 under authority granted by the Oklahoma Indian Welfare Act of 1936. Under this constitution the Tribe has two legislative bodies, a seven-member Executive Council and a General Council composed of all adult tribal members. Among the Executive Council's powers is that of selecting

judges to the Tribe's supreme and inferior courts.  Those selected must then be confirmed by the General Council.  The individual Plaintiffs are members of the Tribe and are or were members of its Executive Council.  Apparently, Clyde McCauley and Clark Pepper have been removed from the Executive Council, and Martha Spotted Bear and Jesse Mehojah are the subject of removal proceedings.

The Executive Council selected Defendant Phil Lujan as judge of the KNDC on June 8, 2002.  Plaintiffs contend that he was not properly confirmed under the Tribe's constitution and hence may not exercise judicial authority. Plaintiff McCauley first challenged Lujan's judicial authority in early November 2002.  Lujan rejected McCauley's argument on November 7, 2002, ruling that he was properly appointed under tribal "rules of procedure establishing the Court by Tribal law," rather than under the Tribe's constitution.  Aplt. App. at 91 (internal quotation marks omitted).

Defendants Charles Tripp and Charles Morris have served as justices of the Kaw Nation Supreme Court since 1999.  Plaintiffs contend that the two men were not properly selected or confirmed as justices.  According to the district court, it is unclear whether they were ever selected by the Executive Council; but Morris was confirmed by the General Council on September 12, 1999, and the General Council has indicated that it confirmed Tripp on June 27, 1999.

On December 5, 2002, Defendant Guy Munroe, the Tribe's chairman, filed suit in the KNDC to remove the individual Plaintiffs from the Executive Council. Lujan, acting as a KNDC judge, enjoined the individual Plaintiffs from voting as members of the Council. On December 12, 2002, the Executive Council passed resolutions withdrawing its prior motion to select Lujan and instructing the court clerk to cease sending case information to Lujan, Morris, and Tripp. Nevertheless, the General Council confirmed Lujan on December 15, 2002. A hearing in the KNDC was scheduled for January 13, 2003, on charges that the individual Plaintiffs committed contempt by violating the injunctions.

*B. Federal Court Proceedings*

On January 8, 2003, five days before the scheduled contempt hearing in the KNDC, Plaintiffs filed suit in the United States District Court for the Western District of Oklahoma, invoking federal jurisdiction under 28 U.S.C. §§ 1331 (cases arising under the Constitution, laws, or treaties of the United States), 1362 (actions brought by Indian tribes that arise under the Constitution, laws, or treaties of the United States), and 1367 (supplemental jurisdiction over claims substantially related to federal claims), and under the Indian Civil Rights Act (ICRA), 25 U.S.C. § 1301 et seq. In Count I they seek a declaration that Lujan was not lawfully appointed a KNDC judge and an injunction prohibiting him from exercising the functions of that office. In Count II they allege that (1) Munroe

-4-

has been using tribal funds to pay Lujan's salary and to pay Lee Stout, an attorney allegedly conspiring with Defendants to control the Tribe's courts, and (2) these expenditures violated 18 U.S.C. § 1163, a criminal statute prohibiting the embezzlement or willful misapplication of tribal funds. Count II seeks to enjoin Munroe from paying Lujan or Stout, and seeks money damages against Munroe and Lujan for the allegedly improper expenditure of tribal funds for judicial salaries and Stout's attorney fees.

On January 13, 2003, the district court entered a temporary restraining order (TRO) prohibiting Lujan from acting as a KNDC judge and set a hearing on Plaintiffs' request for a preliminary injunction. The next day Plaintiffs amended their complaint to add Morris and Tripp as defendants in Count II, and in Counts III and IV seek (1) declarations that Morris and Tripp were not properly appointed to the Tribe's Supreme Court and (2) injunctions against their serving on that court.

Lujan and Munroe moved the district court to dismiss. On February 5, 2003, the district court dismissed Count II for failure to state a claim, holding that 18 U.S.C. § 1163 does not create a private right of action. In addition, it dismissed the other counts without prejudice for failure to exhaust tribal remedies, and it dissolved the TRO. Plaintiffs then filed two motions, one for an amendment to the judgment, requesting that the district court clarify which tribal

remedies required exhaustion, and the other for relief from the judgment under Federal Rule of Civil Procedure 60(b). On June 6 the district court sua sponte ordered the parties to submit briefs addressing whether it possessed subject matter jurisdiction. The parties complied.

On July 1 the district court dismissed the action for lack of subject matter jurisdiction, concluding that it lacked jurisdiction to resolve what was essentially an intratribal dispute. The district court rejected Plaintiffs' arguments that their claims arose under federal law. It reiterated that 18 U.S.C. § 1163 did not create a private right of action, and it followed Supreme Court precedent, Santa Clara Pueblo v. Martinez, 436 U.S. 49, 69-70 (1978), in ruling that relief under the ICRA could be sought solely through a petition for a writ of habeas corpus. The district court also ruled that Plaintiffs were contesting only issues of tribal law, and held that even if Plaintiffs were correct that the rights of non-Indians were affected by the exercise of judicial authority by Lujan, Morris, and Tripp, this was insufficient to create federal subject matter jurisdiction over Plaintiffs' case.

The district court entered judgment on July 10, 2003, and Plaintiffs timely appealed.

## II.    DISCUSSION

We review de novo the district court's dismissal for lack of subject matter jurisdiction. See, e.g., Ordinance 59 Ass'n v. U.S. Dep't of Interior, 163 F.3d

-6-

1150, 1152 (10th Cir. 1998). Plaintiffs have not appealed the district court's dismissal of their claim under 18 U.S.C. § 1163, and in any event that dismissal was correct, see Kaw Nation v. Springer, 341 F.3d 1186, 1190 (10th Cir. 2003) ("We agree that no private right of action for civil parties exists under 18 U.S.C. § 1163."). We hold that none of the other statutes relied on by Plaintiffs in their complaint—28 U.S.C. §§ 1331, 1362, & 1367, and the ICRA, 25 U.S.C. § 1301 et seq.—creates federal subject matter jurisdiction over their case.

The district court correctly held that under Supreme Court precedent, declaratory and injunctive relief and money damages are not available under the ICRA. See Martinez, 436 U.S. at 69-70 (relief under the ICRA is limited to a writ of habeas corpus). And supplemental jurisdiction under 28 U.S.C. § 1367 must be predicated upon original subject matter jurisdiction in the district court. As discussed below, because Plaintiffs' complaint does not present a federal question, there was no original jurisdiction in the district court, and hence no basis for supplemental jurisdiction either.

To acquire jurisdiction under §1331 or § 1362, Plaintiffs must establish that they have a claim arising under federal law. Plaintiffs present two arguments. (We decline to consider a third argument, raised for the first time in their reply brief on appeal, that the complaint raises federal issues because it simply seeks to enforce determinations by the Department of the Interior. Although concerns

about the proper exercise of judicial power may require us to consider a <u>challenge</u> to subject matter jurisdiction first raised in a reply brief, <u>see Murphy v. Derwinski</u>, 990 F.2d 540, 543 (10th Cir. 1993), we need not consider a new argument in support of jurisdiction, <u>see Stump v. Gates</u>, 211 F.3d 527, 533 (10th Cir. 2000) ("This court does not ordinarily review issues raised for the first time in a reply brief.").)

First, Plaintiffs contend that under the Supreme Court's decision in <u>National Farmers Union Insurance Companies v. Crow Tribe</u>, 471 U.S. 845 (1985), "a federal court is empowered to determine under 28 U.S.C. § 1331 whether a tribal court has exceeded the lawful limits of its jurisdiction." Aplt. Br. at 13. Plaintiffs are correct that under <u>National Farmers</u> the outer boundaries of tribal jurisdiction—particularly over non-members—may be a matter of federal law. <u>See National Farmers</u>, 471 U.S. at 851-53. But Plaintiffs do not contest the limits of tribal jurisdiction; they challenge the right of Lujan, Morris, and Tripp to exercise judicial authority. Tribal law, not federal law, dictates which personnel may exercise tribal judicial authority. Plaintiffs cite no federal law allegedly violated by the manner in which Lujan, Morris, and Tripp acquired their judgeships. On the contrary, Plaintiffs state the following:

> [Plaintiffs'] assertions are clear and straightforward, to-wit: (1) the Kaw Nation Constitution requires judges and justices to be selected by the Executive Council and confirmed by the General Council, (2) Lujan's hiring was not confirmed by the General Council prior to the

> Executive Council's withdrawing Lujan's hiring, and (3) no person has been selected by the Executive Council and confirmed by the General Council as a Kaw Nation justice.

Reply Br. at 4-5 (internal quotation marks and footnote omitted). None of these three claims is based on federal law.

Second, Plaintiffs contend that the district court had jurisdiction to hear their case because the underlying controversy is not purely intratribal. They recite a "litany" of "actual and potential non-intra-tribal impact[s] of Lujan's illegal exercise of jurisdiction." Aplt. Br. at 17. But even if the effects of Lujan's exercise of judicial authority reach beyond tribal members, the underlying controversy is over whether he was properly appointed to the KNDC. To establish jurisdiction under either §1331 or §1362, Plaintiffs must point to a law that makes the appointment of Lujan—or of Morris or Tripp—a federal question. As discussed above, however, these appointments are governed by tribal rather than federal law. A dispute over the meaning of tribal law does not "arise under the Constitution, laws, or treaties of the United States," as required by 28 U.S.C. §§ 1331 and 1362. This is the essential point of opinions holding that a federal court has no jurisdiction over an intratribal dispute. See, e.g., Motah v. United States, 402 F.2d 1, 2 (10th Cir. 1968); Prairie Band of Pottawatomie Tribe of Indians v. Udall, 355 F.2d 364, 366 (10th Cir. 1966).

Plaintiffs' attempt to distinguish <u>Udall</u>, 355 F.2d at 366, misses the mark. According to Plaintiffs, <u>Udall</u> involved "a suit against the federal government seeking to challenge a determination by the Secretary of the Interior affecting tribal members," whereas in this case "the relief sought . . . is entirely consistent with determinations by the Secretary and is sought against several non-Kaw Nation members (Lujan, Morris and Tripp) who have set up a phony court system that is issuing orders and decrees without any judicial jurisdictional authority." Aplt. Br. at 15. But even if the Secretary agrees with Plaintiffs' position, the propriety of the appointments of Lujan, Tripp, and Morris to tribal courts is not governed by federal law. Without a federal question, jurisdiction will not lie under §1331 or § 1362. Thus, the district court properly dismissed Plaintiffs' case.

## III. CONCLUSION

AFFIRMED.